In re Petition for **DISCIPLINARY AC-TION AGAINST Wayne A. POKORNY,** an Attorney at Law of the State of Minnesota.

### No. C9-89-719.

Supreme Court of Minnesota.

March 30, 1990.

Rehearing Denied April 12, 1990.

William Wernz, Director of Lawyers' Bd. of Professional Responsibility, Martin A. Cole, Sr. Asst. Director of the Office of Lawyers' Professional Responsibility, St. Paul, for appellant.

Wayne A. Pokorny, Excelsior, for respondent.

## OPINION

PER CURIAM.

Respondent missed three court hearings in two separate matters, issued an insufficient fund check to opposing counsel in payment of court-awarded fees, and failed to pay two judgments for law-related debts. Respondent's prior private disciplines aggravated this misconduct. The Director of the Office of Lawyers Professional Responsibility (Director) and the referee recommended respondent be publicly reprimanded, placed on two years supervised probation, and required to successfully complete the professional responsibility exam and pay the remaining unpaid judgment against him. While we agree with most of this recommended discipline, we feel the nature of this misconduct is not well suited to supervised probation and thus order respondent suspended indefinitely, with conditions for reinstatement.

### I.

Respondent Wayne A. Pokorny was admitted to practice law in Minnesota in 1961, and has continuously practiced here since then, most recently as a solo practitioner. After a hearing, the referee found respondent's conduct violated professional rules in three general areas. First, respondent failed to attend three scheduled court appearances. Robert Jensen retained Pokorny to represent him in his marriage dissolution. Mrs. Jensen's motion for temporary relief was scheduled for July 3, 1985. Pokorny's request for a continuance from opposing counsel was refused and, without seeking a continuance from the court, neither Pokorny nor his client appeared at the July 3rd hearing. After finding the nonappearance to be unjustified, the court assessed $550.00 in attorney fees against Mr. Jensen. Pokorny later requested review of the court's findings in the dissolution, but did not appear for that hearing scheduled on October 27, 1986. Pokorny was retained by Steven Spitzer, but respondent failed to appear at a October 20, 1987, hearing on discovery motions. The court assessed Pokorny $150.00 in attorney fees for the missed appearance,

which was to be paid to opposing counsel, M. Sue Wilson.

The referee found respondent did not pay the court-ordered fees to Wilson within the required 14 days. Several months later, Pokorny gave Wilson a check drawn on his law office business account for $150.00; in exchange she agreed not to raise the non-payment issue at their upcoming pre-trial conference. The check was returned by the bank for insufficient funds. Pokorny told Wilson's office he would send another check, but did not. After Wilson filed an ethics complaint against Pokorny, for which he demanded an apology from her, he issued a $100.00 check to Wilson and later sent her a check for the remaining $50.00.

The third category of respondent's misconduct relates to his failure to pay judgments arising out of law-related debts. Pokorny bought a copy machine for his law office in November 1984 from Sel–Mor Distributing Company and paid one-third of the purchase price. He failed to make the December 1984 and January 1985 installment payments for the rest of the purchase price. Pokorny also did not pay for copy supplies ordered by him or his office that were sent to him and charged to his account. In July 1986, Sel–Mor obtained a default judgment for $805.81 against Pokorny in conciliation court. Respondent maintains he has "no plans to make voluntary payment" of this judgment. Alan Godding, Jr. performed process serving for Pokorny's law office. After Pokorny failed to pay Godding, the matter went to conciliation court where Godding received a judgment against respondent. Godding then levied Pokorny's office account for part of the judgment. In October 1988, after Godding filed an ethics complaint against him, Pokorny paid the balance of this judgment.

Respondent has been subject to three prior private disciplines, which the referee considered in aggravation of the current misconduct. On September 11, 1979, respondent stipulated to a warning for failing to pay a court reporter. After a panel hearing, respondent received a warning on June 6, 1980, for failing to refund the unearned portion of a client retainer. Finally, respondent was issued an admonition on February 26, 1985, for failing to communicate with a client and to release the client's files to his new attorney.

## II.

By ordering a transcript, respondent contests the referee's findings of fact, conclusions of law and recommendations for discipline. Rule 14(d), Rules on Lawyers Professional Responsibility (RLPR). Respondent does not deny committing the acts that form the basis for this action, but generally argues his conduct was not unethical. We note at the outset that although the referee's findings, conclusions and recommendations are afforded great weight, "the final responsibility for determining appropriate discipline rests solely with this court." *In re Schmidt*, 402 N.W.2d 544, 545 (Minn.1987). In determining appropriate discipline, we "weigh carefully the nature of the misconduct, the cumulative weight of the disciplinary rule violations, the harm to the public, and the harm to the legal profession." *In re Franke*, 345 N.W.2d 224, 228 (Minn.1984).

1. Although respondent admittedly failed to attend three scheduled court appearances, he contends the absences were justified. Respondent maintains travel plans conflicted with the July 3, 1985, hearing and his client approved of the nonappearance. The referee found, however, respondent did not actually leave town as planned, thus there was no apparent reason for his nonappearance. Respondent argues opposing counsel's refusal to agree to continue that hearing was unreasonable, yet concedes he did not secure a court-ordered continuance. Respondent was in trial on another matter on October 27, 1986, and argues the judge's refusal to delay the start of that trial so he could attend the Jensen hearing was unreasonable. He asserts he missed the October 20, 1987, hearing because of improper maintenance of his calendar and unfamiliarity of his new secretary with such procedures. The referee found these excuses inadequate, stating,

"Pokorny's failure to appear bespeaks of misconduct, not inadvertence."

The referee concluded respondent's nonappearances violated Minn.R.Prof.Conduct 1.3 (diligence), 3.4(c) (knowingly disobeying an obligation), and 8.4(d) (conduct prejudicial to administration of justice). Undoubtedly, such conduct should be discouraged because it indicates indifference not only to clients, "but to the officials charged with policing the profession and this court." *In re Rockne*, 375 N.W.2d 28, 30 (Minn.1985). We note, however, that failure to appear, by itself, generally does not warrant severe discipline unless accompanied by other misconduct. *E.g., In re Anderson*, 409 N.W.2d 220, 221–22 (Minn. 1987) (noncooperation with disciplinary proceeding and failure to appear in court, inter alia, warrants indefinite suspension of attorney already on probation); *In re Henke*, 400 N.W.2d 720, 721 (Minn.1987) (attorney indefinitely suspended for representing clients while on restricted status, neglecting client matters and failing to appear at court hearings).

Respondent's argument that the referee should have conducted an independent investigation on this issue is without merit because even if there were no other missed hearings, the three admitted nonappearances constitute misconduct. Also meritless is respondent's contention that his conduct was not unethical because no clients were injured or prejudiced by the nonappearances. Jensen was harmed when attorney fees were assessed against him, not respondent, and the dissolution findings consequently were not reviewed. Further, Jensen later discharged respondent as his attorney and brought an ethics complaint against him, specifically citing the nonappearances. Although fees for the October 20th absence were assessed against respondent, his client was prejudiced by the delay.

2. Respondent admittedly issued an insufficient funds check in payment of fees assessed for one of his nonappearances and then failed to issue a substitute check until an ethics complaint was filed against him. The referee concluded this conduct violated Minn.R.Prof.Conduct 8.4(c) (dishonest, deceitful or fraudulent conduct). Further, because the debt was directly related to respondent's law practice, the referee considered it conduct prejudicial to the administration of justice in violation of Minn.R. Prof.Conduct 8.4(d). Respondent maintains he should not be subject to discipline because the insufficient funds check was inadvertent and isolated. *See In re Gubbins*, 380 N.W.2d 810, 811–12 (Minn.1986) (four-month suspension for issuing 217 NSF checks, along with other misconduct, although no client loss); *In re Larson*, 324 N.W.2d 656, 658–59 (Minn.1982) (series of NSF checks, misrepresentation and misappropriation warrants disbarment).

The Director concedes issuance of one bad check by itself arguably would not warrant public discipline. Respondent's misconduct, however, is not isolated but occurred in conjunction with other rule violations. Moreover, while anyone may mistakenly write an insufficient funds check, the context here is more serious. Respondent failed to pay the fees within the requisite time period, then issued the bad check. After being notified the check was returned for insufficient funds, he failed to issue a substitute check—although he said he would—until Wilson filed an ethics complaint against him.

3. Two conciliation court judgments arising out of law-related debts were entered against respondent. After Godding filed an ethics complaint against him for nonpayment, respondent paid that judgment. To date, respondent has not paid the Sel–Mor judgment and Sel–Mor has been able to collect only a portion of this debt through bank levies. The referee concluded respondent's conduct violated Minn.R. Prof.Conduct 8.4(c) and (d). While "[a] lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists," Minn.R.Prof.Conduct 8.4 comment, such is not the case here because respondent admits he owes the money. He contends his refusal to pay is a matter of principle, yet he did not appeal nor seek to vacate either judgment and firmly maintains he will not voluntarily pay the Sel–Mor debt.

Respondent objects to Sel–Mor and Godding using the Office of Lawyers Professional Responsibility as a collection agency by filing ethics complaints against him to coerce payment, arguing they should be required to resort to remedies such as garnishment or execution. This ignores the fact that Sel–Mor and Godding attempted, but were only partially successful at, such collection efforts. Respondent argues his refusal to pay is not unethical, as analogous to the right to discharge debts in bankruptcy, since he is not hiding his assets nor preventing collection. We have held, however, that bar "applicants who flagrantly disregard the rights of others and default on serious financial obligations * * * are lacking in good moral character if the default is neglectful, irresponsible, and cannot be excused by a compelling hardship that is reasonably beyond the control of the applicant." *In re Gahan*, 279 N.W.2d 826, 831 (Minn.1979). Respondent offers no such hardship as an excuse for nonpayment.

We have subjected attorneys to discipline for neglecting professional obligations. *E.g., In re Mose*, 443 N.W.2d 191, 191–92 (Minn.1989) (mishandling client matters and failing to pay court-awarded fees warrants supervised probation); *In re Peters*, 332 N.W.2d 10, 19 (Minn.1983) (indefinite suspension; reinstatement conditioned upon, inter alia, payment of law-related debts). We feel respondent's adamant stance against voluntary payment of valid debts, especially when such obligations were for goods and services used in respondent's law practice, "reflects adversely on his commitment to the rights of others, thereby reflecting adversely on his fitness for the practice of law." *Gahan*, 279 N.W.2d at 831. Indeed, two of respondent's prior disciplines—for failing to pay a court reporter and to return client funds—involve similar misconduct, further indicating respondent's indifference to his financial obligations arising out of the practice of law.

### III.

Once misconduct is established, aggravating and mitigating factors should be considered in determining appropriate discipline. *In re Boyd*, 430 N.W.2d 663, 664–65 (Minn.1988). The referee concluded Pokorny's private warnings and admonition were aggravating factors. Respondent challenges use of the 1985 admonition because the client involved, who was not the complainant, sought to have the complaint withdrawn approximately two years after it was initiated. The Director's office, however, declined to reopen the investigation or withdraw the complaint that respondent had accepted without challenge. The referee properly did not disturb the admonition. *See* Rule 19(b)(2), RLPR (findings in prior disciplinary disposition are conclusive).

The referee found respondent's attitude "to be the most distressing aspect of the case. There is no contrition, no remorse, and no willingness to make amends. Everything that happened has been the fault of others * * *." The referee cites, for example, respondent's demand of an apology from Wilson for bringing an ethics complaint against him as "a typical 'red herring'—contrived for the sole purpose of diverting attention away from the real culprit." Respondent now appears remorseful for the issuance of the insufficient funds check and his nonappearances. Contrarily, he clearly does not feel failure to voluntarily pay the Sel–Mor and Godding judgments was wrong. In mitigation of respondent's misconduct, no evidence of a selfish or dishonest motive was presented regarding his failure to appear or make voluntary payment. In addition, he has cooperated with the Director in these proceedings, but we are troubled by respondent's attitude evidenced in the record and before us at oral argument. As the referee noted, respondent "has a habit of calling everyone who disagrees with him a liar."

We believe public discipline now is necessary to protect the public. The private warnings and admonition respondent received apparently have not been successful in motivating him to review his practices or in preventing further misconduct. The Director requested Pokorny be publicly reprimanded, placed on two years supervised probation, and required to take the profes-

sional responsibility exam and to pay the balance of the Sel–Mor judgment. While the referee recommended the discipline proposed by the Director, he added, "in my judgment the sanctions * * * are rather mild." We concur with most of the recommended discipline but feel this type of misconduct, which involves judgment calls, does not lend itself well to correction by supervised practice. Accordingly, IT IS HEREBY ORDERED:

1. That respondent Wayne A. Pokorny is hereby reprimanded and indefinitely suspended from the practice of law from the date of filing this opinion. Effective immediately, he shall comply with the notice requirements of Rule 26, RLPR.

2. That respondent may petition for reinstatement when the following conditions have been met:

a. Respondent has successfully completed such written examination on the subject of professional responsibility as the State Board of Law Examiners requires for admission to the practice of law.

b. Respondent has paid the remaining balance of the Sel–Mor judgment.

c. Respondent has paid to the Director $750 in costs pursuant to Rule 24, RLPR.