In re Petition For DISCIPLINARY AC-
TION AGAINST Alfred Milton STAN-
BURY, an Attorney at Law of the State
of Minnesota.

No. CX–96–859.

Supreme Court of Minnesota.

April 3, 1997.

Alfred Milton Stanbury, Minneapolis, pro se.

Marcia A. Johnson, Patrick R. Burns, St. Paul, for Office of Lawyers Professional Responsibility.

## OPINION

On April 29, 1996, the Director of the Office of Lawyers Professional Responsibility filed a petition seeking public discipline of respondent, Alfred Milton Stanbury, for refusing to pay a law-related judgment against him and for refusing to make payment on a court filing fee.

Stanbury was admitted to the practice of law in Minnesota on May 12, 1988. Since his admission, he has received two private admonitions for unprofessional conduct. First, Stanbury was admonished on May 29, 1991 for twice executing false proofs of service and obtaining subpoenas based on those proofs of service, in violation of Minn.R.Prof.Conduct 8.4(c). Second, Stanbury was admonished on August 29, 1994 for refusing to return a former client's file after withdrawing from representation; insisting that she come to his home office alone to retrieve the file; and asserting a claim for fees against her for work that Stanbury withheld, in violation of Minn.R.Prof.Conduct 1.16(d), 4.4 and Lawyers Professional Responsibility Board Opinions 11 and 13.

In this case, the Director seeks disciplinary action based on two incidents. The first matter involves Stanbury's refusal to voluntarily pay a judgment against him. Stanbury signed a membership agreement with the Hennepin County Law Library in November 1988, which allowed him access to online computer research services. Stanbury paid all of his monthly law library billings through March 1992, but he failed to pay two subsequent billings totalling $2,016.70 billed on March 23 and April 29, 1992. Stanbury received the invoices for both of these charges. Between June 29 and October 28, 1992, the law library attempted to contact Stanbury five times about the amount owed—three times by mail, once by telephone, and once by certified mail—but Stanbury did not respond to any of these notices. The law library sued Stanbury and obtained a conciliation court judgment against him for $1,680.59 on May 18, 1993. On October 20, 1993, after

a trial de novo, the district court entered judgment against him for $1,680.59, plus $200 in costs, minus $48.27 credit.[1] The court denied Stanbury's motion for a new trial and ordered that judgment be entered against him on January 12, 1994.

Stanbury did not appeal the district court's order nor has he made any voluntary payments on the judgment. At the disciplinary hearing, Stanbury admitted that he has the financial ability to pay the judgment and that he owes at least $800 or $900 of the judgment, but he testified that he will not pay even the amount he admits he owes because he believes that partial payment will not resolve the dispute. By contrast, in his brief to this court, Stanbury asserts that he "has always expressed a good faith willingness to pay all but the amount which he believes in good faith was erroneously billed." Stanbury also testified that he does not believe that a judgment establishes the "validity" of an underlying debt; a judgment, in his opinion, merely imposes an "obligation to pay" that is "not valid if I have a good faith belief in its invalidity."

The second matter for which the Director seeks disciplinary action involves Stanbury's refusal to pay a $129 court filing fee. Stanbury incurred the fee when he filed a petition for writ of habeas corpus in Anoka County District Court on March 8, 1995, seeking release of a client from the Anoka–Metro Regional Treatment Center. Stanbury submitted a personal check as payment for the filing fee, but, after the petition was denied without a hearing on March 9, Stanbury stopped payment on the check on March 10.

On March 20, Stanbury wrote a letter to the Anoka County Office of Court Administration explaining why he stopped payment. Stanbury cited "the ignorant, inattentive, and illegal way the denial decision [of the district court] was arrived at * * *." He also complained that the court's decision was not made quickly enough; that the court failed to conduct a hearing required by Minn.Stat. § 253B.05, subd. 3(b) (1996)—although he failed to request such a hearing; and that

two judges "abdicated their judicial responsibilities" by denying the petition without adequate consideration. Stanbury added that his client "enjoys no room in her life to pay for services not rendered. The $129 was not earned, period." The district court's ruling was not appealed. Stanbury admits that he has the financial ability to pay the fee, but he has no current intention to make good on his check.

After a disciplinary hearing, the referee concluded that Stanbury's refusals to pay the judgment and the filing fee each constituted "conduct involving dishonesty, fraud, deceit, or misrepresentation and [are] prejudicial to the administration of justice" under Minn.R.Prof.Conduct 8.4(c) and 8.4(d). For refusing to voluntarily satisfy the law library's judgment against him, the referee recommended a public reprimand and that Stanbury be ordered to pay the judgment within 30 days or face suspension. For refusing to make payment on the court filing fee, the referee recommended a 30–day suspension and that Stanbury (1) pay the filing fee within 30 days, (2) pay costs under Rule 24, Rules on Lawyers Professional Responsibility (RLPR) within 30 days, and (3) pass the professional responsibility examination within one year; if Stanbury were to fail to comply with these three requirements, the referee recommended suspension until he does so. In making these recommendations, the referee considered Stanbury's prior disciplinary history as an aggravating factor.

Stanbury ordered a transcript of the disciplinary hearing and notified this court pursuant to Rule 14(e), RLPR. Therefore, the referee's findings and conclusions are not conclusive, but are reviewed by this court for clear error. *In re Montpetit,* 528 N.W.2d 243, 245 (Minn.1995).

## I.

Stanbury contends that his refusal to voluntarily pay the law library's judgment against him is not unprofessional conduct. The referee relied on both Minn.R.Prof.Con-

---

1. In his brief, Stanbury notes that he offered to settle the matter for $800 before removing the case to district court, but that negotiations with the law library failed. In district court, Stanbury argued, unsuccessfully, that the invoices overstated his use by $966.53.

duct 8.4(c) and 8.4(d), which provide that it is unprofessional conduct to:

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]

(d) engage in conduct that is prejudicial to the administration of justice[.]

■ We agree with Stanbury that Minn.R.Prof.Conduct 8.4(c) does not apply. The Director did not aver dishonesty, fraud, deceit, or misrepresentation in the petition for disciplinary action. The Director responds that refusals to pay such professionally incurred debts are "inherently dishonest" due to a lawyer's "participation in the legal system under false pretenses" by holding a license to practice "granted * * * with the expectation that he will work within the legal system." However, the Director's definition of "dishonesty" seems to reach practically any action that violates the rules of professional conduct. The Director's argument is more closely related to Rule 8.4(d). Although both Rules 8.4(c) and 8.4(d) may apply in certain cases involving law-related debts, there is no evidence in this record supporting the application of Rule 8.4(c) to Stanbury's refusal to pay the law library.

■ However, Minn.R.Prof.Conduct 8.4(d) and established precedent leave no doubt that Stanbury's conduct was unprofessional and warrants discipline. On quite similar facts, in *In re Pokorny*, 453 N.W.2d 345 (Minn.1990), we concluded that a lawyer's refusal to pay debts arising out of the practice of law was unprofessional conduct. *Id.* at 347–48. Pokorny was disciplined for refusing to pay two conciliation court judgments against him, owed for process serving and for a copy machine and supplies. *Id.* at 346. Pokorny paid the process server after an ethics complaint was filed against him, but he refused to voluntarily pay the copy machine and supply company. The company was able to collect only a portion of the judgment through bank levies against Pokorny. Pokorny argued that his refusal was

based on "principle," yet he did not appeal or otherwise challenge either judgment. *Id.* at 347. We concluded,

[R]espondent's adamant stance against voluntary payment of valid debts, especially when such obligations were for goods and services used in respondent's law practice, "reflects adversely on his commitment to the rights of others, thereby reflecting adversely on his fitness for the practice of law."

*Id.* at 348 (citation omitted); *see also In re Haugen*, 543 N.W.2d 372, 375 (Minn.1996) (concluding that failure to timely pay court reporter fees is unprofessional conduct); *In re Hartke*, 529 N.W.2d 678, 683 (Minn.1995) (concluding that failure to satisfy a fee arbitration award until two months after an ethics complaint was filed—and after a check was returned for insufficient funds—violated Minn.R.Prof.Conduct 8.4(d)); *In re Ruffenach*, 486 N.W.2d 387, 390 (Minn.1992) (concluding that failure to voluntarily pay a legal malpractice judgment constituted unprofessional conduct). The same principle and prohibition applies to Stanbury's conduct.

Stanbury's attempts to distinguish *Pokorny* are unconvincing. Stanbury notes that *Pokorny* quoted the commentary to Rule 8.4(d): "[a] lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists." *Pokorny*, 453 N.W.2d at 347.[2] Stanbury claims that he has a "good faith belief" that part of the judgment against him is "invalid" because he was overcharged. But even if Stanbury's unjustifiably broad interpretation of *Pokorny* were somehow correct, Stanbury fails to meet his own standard for exemption from discipline. Stanbury plainly admits that at least half of the law library's judgment against him is "valid"—*i.e.*, he concedes that he has no "good faith belief" that justifies nonpayment—and yet, by choice, he has paid nothing. We see no significance in

---

**2.** Contrary to Stanbury's assertion, it is unclear whether Pokorny's refusal to pay was based on a belief that the debt was "invalid"; our opinion only noted that his refusal did not appear to be based on "principle" because he did not challenge the judgment. *Id.* Stanbury seems to believe that his refusal based on an asserted "good

faith belief" is somehow distinct from a refusal based on "principle." These two motivations are obviously not mutually exclusive. And to the extent Stanbury relies on the *absence* of principle guiding his conduct, his argument is only weakened.

Stanbury's bald assertion that he has always been willing to pay that portion of the judgment he subjectively believes he owes. After final judgment and exhaustion of his legal appeals, Stanbury did not voluntarily pay *any* portion of his debt. This conduct alone is sufficient to violate Rule 8.4(d).

In addition, we agree with the Director that a lawyer cannot assert, in good faith, that no "valid" obligation exists once a debt is reduced to judgment and the lawyer's legal challenges have been exhausted. *Pokorny* simply concluded that the lawyer in that case did not have a good faith belief such that the commentary to Rule 8.4(d) could even be invoked; the scope of the commentary was not directly addressed. We subsequently indicated that the rules of professional conduct do not recognize "good faith beliefs" in the face of final judgments. In *Ruffenach,* we described Pokorny's violation as the "willful failure to pay law-related debts whose validity are not in dispute." *Ruffenach,* 486 N.W.2d at 390. Ruffenach apparently did not believe that he had committed malpractice—the basis for the judgment which Ruffenach did not voluntarily pay. Nevertheless, we concluded that Ruffenach "waived" that argument by accepting a default judgment in conciliation court: "we treat the judgment as valid." *Id.* at 390–91 & n. 3. The commentary to Rule 8.4(d) offers no refuge for Stanbury. At this late date, his opinion as to the extent of his debt is no longer relevant. Stanbury's refusal to pay the law library's judgment was unprofessional conduct.

## II.

Stanbury also maintains that neither Minn.R.Prof.Conduct 8.4(c) nor 8.4(d) apply to his stop-payment order on the personal check that he tendered for a court filing fee. On brief, Stanbury asserts that his conduct "was nothing more than an act of civil disobedience." At oral argument, Stanbury again attacked the procedure employed to deny the petition he filed, as well as the district court itself. In this matter, Stanbury contends, "the court was my opponent."

Stanbury's conduct violated both Minn.R.Prof.Conduct 8.4(c) and 8.4(d).

First, we believe that submitting payment for a filing fee and then purposely reneging on that payment constitutes dishonesty and misrepresentation toward the judicial system in violation of Rule 8.4(c). Court filing fees must be paid unconditionally and with the expectation that the payor will not intentionally thwart collection of the fee.

More importantly, Stanbury's conduct clearly prejudiced the administration of justice in violation of Rule 8.4(d). Stanbury acknowledges that a filing fee was required for consideration of the habeas corpus petition, but he believes that a disagreement with the district court's decision or the manner in which it was reached justifies a stop-payment order. As the referee explained, "A system based on individual whim cannot survive." Stanbury argues that the filing fee was not a "debt," and, even if it was, the debt was owed by his client. However, Stanbury's stop-payment order and his persistent refusal to make payment did result in a fee owed, but not paid, to Anoka County.

In any event, Stanbury loses the forest for the trees. There need not be a "debt" owed by the lawyer for Rule 8.4(d) to apply. The question is whether Stanbury's conduct was prejudicial to the administration of justice. It clearly was. Even if refusing to pay law-related debts to private parties lies near the edge of Rule 8.4(d)'s reach, refusing to make good on court filing fees—payments which provide direct financial support for our judicial system—falls within the core definition of conduct prejudicial to the administration of justice. Stanbury argues that he is unlikely to engage in such conduct again, but before this court he declared, "unequivocally," that he did not regret his decision. Stanbury also submits that the courts could change their fee collection systems to prevent conduct like his from reoccurring. This "solution" seems indicative of Stanbury's attitude toward the disciplinary process: the *judicial system* should accommodate *his* conclusions about what conduct is proper. But in this case, it is not the system that is in need of reexamination and reform.

## III.

Stanbury offers a variety of additional and unpersuasive defenses. He argues

that the language in Rule 8.4(d) is unconstitutionally vague, a challenge we considered and rejected in *In re N.P.*, 361 N.W.2d 386, 395 (Minn.1985) (upholding DR 1–102(A)(5), Minn.Code Prof.Resp. (1985), and recognizing that broad standards of professional conduct are necessary and constitutionally permissible). Furthermore, even if the issue were open, for Stanbury to prevail the rule must be vague in all applications or as applied to the instant conduct. *See Parker v. Levy*, 417 U.S. 733, 753–58, 94 S.Ct. 2547, 2560–63, 41 L.Ed.2d 439 (1974); Laurence H. Tribe, *American Constitutional Law* § 12–32 (2d ed. 1988). Refusing to pay court filing fees is clearly within the rule, and *Pokorny* placed the profession on notice that refusing to pay law-related debts can be a basis for disciplinary action.[3]

Stanbury also argues that the Director's petition violated due process under the Fourteenth Amendment because it is "improperly and impermissibly broad." *Cf. In re Ruffalo*, 390 U.S. 544, 550–52, 88 S.Ct. 1222, 1225–27, 20 L.Ed.2d 117 (1968) (disbarment proceedings are subject to due process protections). The petition charged Stanbury with violations of Rules, "including but not necessarily limited to," 8.4(c) and 8.4(d). However, in response to Stanbury's motion to dismiss prior to the disciplinary hearing, the Director conceded that the challenged language was insufficiently precise and the referee considered *only* the rules of professional conduct specifically identified in the original petition. Stanbury misconstrues *Ruffalo*. There, the charge *upon which the lawyer was disbarred* was added after the disciplinary hearing commenced and the lawyer did not have an adequate opportunity to respond. *Id.* at 549–51, 88 S.Ct. at 1225–26.

## IV.

A referee's disciplinary recommendation is afforded great weight, but this court bears final responsibility for determining appropriate discipline. We evaluate the unique circumstances of each case individually. *Hartke*, 529 N.W.2d at 683. Discipline is imposed not to punish the lawyer, but to protect the public, to safeguard the administration of justice, and to deter potential future misconduct. *In re Jensen*, 542 N.W.2d 627, 632 (Minn.1996). In determining discipline, this court weighs the nature of the misconduct; the cumulative weight of the disciplinary rule violations; and the potential harm to the public, to the legal profession, and to the administration of justice. *Id.* (citing *In re Shoemaker*, 518 N.W.2d 552, 555 (Minn.1994)); *Pokorny*, 453 N.W.2d at 346.

Similar cases are few in number, but they support the reasonableness of the referee's recommended discipline. In *Pokorny*, we imposed indefinite suspension, allowing a petition for reinstatement after satisfaction of the unpaid law-related debt and successful completion of the professional responsibility examination. *Pokorny*, 453 N.W.2d at 349. Pokorny had received two prior private warnings (one for failing to pay a court reporter) and an admonition. *Id.* at 346. We also noted the referee's conclusion that Pokorny lacked contrition, remorse, or a willingness to make amends. *Id.* at 348. However, Pokorny also failed to attend scheduled court appearances and to promptly pay a court-ordered fee. *Id.* at 346–47. In *Ruffenach*, we imposed a minimum 90–day suspension, with an opportunity to petition for reinstatement thereafter, and successful completion of the professional responsibility examination within one year or face indefinite suspension. *Ruffenach*, 486 N.W.2d at 391. Ruffenach had refused to voluntarily pay a legal malpractice judgment, but he had also provided false and misleading financial information to his judgment creditor and he had previously received one public and three private reprimands. *Id.* at 390–91.[4]

---

**3.** Stanbury also references the First Amendment and alleges that Rule 8.4(d) is overbroad, but he lacks standing to raise the issue. *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 611–16, 93 S.Ct. 2908, 2914, 2915–18, 37 L.Ed.2d 830 (1973). Stanbury has made no effort to analyze the reach of the statute and we conclude that the bulk of prohibited activity under Rule 8.4(d) is conduct unprotected by the First Amendment.

**4.** Stanbury believes that consideration of his two prior admonitions was improper. His argument lacks merit. *E.g.*, *Ruffenach*, 486 N.W.2d at 390–91; *Pokorny*, 453 N.W.2d at 348.

At oral argument, Stanbury acknowledged the validity of a disciplinary order issued by this court, regardless of his subjective beliefs. After further reflection on his responsibilities as a lawyer, we trust that, in the future, he will afford that same essential and irreducible degree of respect to the rest of our judicial system.

We order the following discipline:

1. Respondent, Alfred Milton Stanbury, is hereby publicly reprimanded for refusing to satisfy a professionally related judgment against him in violation of Rule 8.4(d) of the Minnesota Rules of Professional Conduct;

2. Respondent is hereby suspended from the practice of law in the State of Minnesota for a period of 30 days, commencing 14 days from the date of this order, for stopping payment on a court filing fee in violation of Rules 8.4(c)–(d) of the Minnesota Rules of Professional Conduct;

3. Within 30 days from the date of this order, Respondent shall satisfy each of the following requirements, or he shall be suspended from the practice of law in the State of Minnesota until he complies:

a. Pay any remaining portion of the judgment against him still owed to the Hennepin County Law Library;

b. Pay the filing fee owed to Anoka County; and

c. Pay costs in the amount of $900 and disbursements to the Director of the Office of Lawyers Professional Responsibility pursuant to Rule 24, Rules on Lawyers Professional Responsibility.

4. Within one year from the date of this order, Respondent shall pass the professional responsibility examination pursuant to Rule 18(e)(3), Rules on Lawyers Professional Responsibility.

5. Respondent shall comply with the notice requirements of Rule 26, Rules on Lawyers Professional Responsibilities.

So ordered.