In re Petition for DISCIPLINARY AC-
TION AGAINST David Timothy RED-
BURN, a Minnesota Attorney, Regis-
tration No. 212672.

No. A07–1590.

Supreme Court of Minnesota.

March 20, 2008.

OPINION

PER CURIAM.

This attorney discipline case concerns
the appropriate discipline to be imposed on
respondent, David T. Redburn, an attor-

ney licensed to practice law in Minnesota. While Redburn was suspended from the practice of law, the Director of the Office of Lawyers Professional Responsibility (Director) received complaints from three of Redburn's clients and from a translator Redburn hired to provide in-court services to another client. These complaints alleged that Redburn failed to provide diligent representation, failed to communicate with clients, failed to notify clients of his suspension, failed to return unearned retainer fees, failed to account for attorney fees, and failed to pay a professional debt. On several occasions, the Director and the district ethics committee unsuccessfully sought Redburn's response to these complaints, leading the Director to file a petition for discipline. Because Redburn failed to answer the petition, we ordered that the allegations in the petition be deemed admitted. Based on the facts as deemed admitted in the petition and Redburn's disciplinary history, the Director recommends disbarment. We agree with the Director that disbarment is the appropriate discipline here.

David T. Redburn was admitted to practice law in Minnesota on October 26, 1990. Redburn last practiced law in Brooklyn Park, Minnesota.

### Disciplinary History

Redburn's disciplinary history includes private probation, suspension from the practice, and four private admonitions. The discipline began on September 16, 1996, when the Director issued Redburn two admonitions for failing to deposit a retainer fee in a client trust account, prematurely filing an action before serving any defendant, losing a certified mail envelope and its contents (which related to a client matter), neglecting litigation entrusted to him, failing to adequately communicate with a client, and failing to prepare a proposed order. The Director then placed Redburn on private probation on September 4, 1997, for failing to properly maintain client trust account records, making misleading statements to a tribunal, and failing to exercise diligence in representation. The Director issued a third admonition to Redburn on October 1, 1999, for failing to pay an expert witness's fee. And on February 12, 2003, the Director admonished Redburn for failing to act with diligence in representing a client in a marriage dissolution matter.

Finally, on August 11, 2005, we suspended Redburn from the practice of law for four months because of misconduct. Redburn stipulated to the suspension and admitted that he committed acts of misconduct including his

> failure to competently and diligently pursue a client's appeal, failure to obtain a client's consent before withdrawing an appeal, failure to respond to telephone calls and correspondence from the clerk of court for the Eighth Circuit Court of Appeals, failure to make court-ordered financial disclosures, noncommunication on several client matters, failure to return client files, unauthorized practice of law while on CLE restricted status, and noncooperation.

*In re Redburn,* 702 N.W.2d 215, 215 (Minn.2005). Since that suspension, Redburn has not sought reinstatement. We administratively suspended Redburn on October 1, 2005, for failing to pay attorney registration fees.

### The Current Petition for Disciplinary Action

The current petition for disciplinary action involves Redburn's representation of clients in three separate matters. It also involves Redburn's failure to pay a professionally-incurred debt and subsequent judgment owed to a Spanish language

translator for in-court translation services provided to a client of Redburn's. And it involves Redburn's failure to cooperate with the Director's investigation of his clients' and the translator's complaints.

### 1. B.B. Matter

Redburn agreed to represent B.B. in a bankruptcy matter in January 2005 and charged B.B. a $1,000 retainer fee. There was no written fee agreement. Redburn advised B.B. that, before filing a bankruptcy petition, B.B. should transfer assets to his wife, open a separate bank account in his wife's name and transfer the couple's tax refund, other jointly held funds, and his paychecks into this account. Redburn also advised B.B. to transfer $10,500 from a bank account in his wife's name to an account in her father's name.[1] Redburn then filed a voluntary bankruptcy petition for B.B. The bankruptcy trustee requested B.B.'s bank statements and B.B. gave those records to Redburn to forward to the trustee. But Redburn did not provide the statements to the trustee, and the trustee was forced to secure B.B.'s bank records through court order. When the bankruptcy court later sent B.B. a Discharge of Debtor, B.B., trying to discover the meaning of the Discharge, was unable to reach Redburn on several occasions. At no point in his representation did Redburn inform B.B. that he was suspended from the practice of law in August 2005. In March 2006, the bankruptcy court, acting on the request of the bankruptcy trustee, ordered B.B., his wife and his father-in-law to appear for examination under Bankruptcy Rule 2004.[2] B.B. then retained new counsel.

In the petition for disciplinary action the Director alleges that Redburn's actions in representing B.B. violated Minn. R. Prof. Conduct 1.1, 1.3, 1.4(a) and (b), 1.5(a), 1.16(d), and 8.4(c). The Director also alleges that Redburn violated the mandate of Rule 26 of the Rules on Lawyer's Professional Responsibility (RLPR) that a suspended lawyer inform his clients and the court of a suspension.

### 2. T.K. and S.K. Matter

In July 2005, Redburn agreed to represent T.K. and S.K. in bankruptcy proceedings. Redburn did not inform T.K. and S.K. at any time during his representation of them of his August 2005 suspension from the practice of law. T.K. and S.K. paid Redburn a $1,000 prepayment in three installments between June[3] and August 2005, and Redburn negotiated the payments for his own benefit. Redburn failed to have any contact with T.K. and S.K. after receipt of their final payment despite T.K.'s repeated attempts to contact Redburn. T.K. and S.K. eventually obtained new counsel.

The Director alleges that Redburn's actions in connection with his representation of T.K. and S.K. violated Minn. R. Prof. Conduct 1.4(a) and (b), 1.15(c)(3) and (c)(4), 1.16(d), and 8.4(c) and (d). The Director

---

1. On April 12, 2006, B.B.'s father-in-law voluntarily returned the $10,500 that B.B. had transferred to him because of Redburn's advice.

2. Federal Rule of Bankruptcy Procedure 2004 provides, in part, that "[t]he court may for cause shown and on terms as it may impose order the debtor to be examined under this rule at any time or place it designates, whether within or without the district wherein the

case is pending." Fed. R. Bank. P. 2004(d). That Rule also permits the court to order the examination of any other entity upon application of any party in interest. Fed. R. Bank. P. 2004(a).

3. The record is unclear with regard to the reason T.K. and S.K. paid the first installment in June 2005 before retaining Redburn in July.

also alleges that Redburn's failure to inform T.K. and S.K. upon his suspension violated Rule 26, RLPR.

### 3. D.M. Matter

In June 2005, Redburn agreed to represent D.M. in a marriage dissolution matter. D.M. paid Redburn $2,000 as a retainer without a written retainer agreement. Redburn did not inform D.M. of his suspension from the practice of law in August 2005. Redburn eventually arranged for Redburn's ex-wife, E.S., to represent D.M. in the dissolution proceedings but did not notify D.M. of the substitution. Redburn kept the $2,000 retainer fee despite having agreed to forward it to E.S.

The Director alleges that Redburn's representation of D.M. violated Minn. R. Prof. Conduct 1.4(a) and (b), 1.15(a), 1.15(c)(3) and (c)(4), and 8.4(d). The Director also alleges that Redburn violated Rule 26, RLPR, by failing to inform D.M. of his suspension.

### 4. M.M. Matter

M.M. provided professional translation services to a Spanish-speaking client of Redburn's in October and November 2003. M.M. sent invoices for her services to Redburn over the following five months, and attempted to contact Redburn by telephone and through another attorney. While Redburn apologized and promised to pay the debt, he never did. M.M. obtained a default judgment against Redburn but has been unsuccessful in collecting on that judgment.

The Director alleges that Redburn's failure to pay M.M. violated Minn. R. Prof. Conduct 8.4(d).

### 5. Noncooperation

The Director received complaints from each of Redburn's clients and from M.M.

Following receipt of these complaints, the Director initiated an investigation. Redburn failed to respond to the Director's December 7, 2005, notice of investigation regarding the D.M. complaint. From January through March 2006, Redburn did not respond to letters and several telephone calls from the district ethics committee requesting his immediate response to the D.M. complaint.

Redburn did not respond to the Director's March 3, 2006 notice of investigation requesting a response to the M.M. complaint. He also failed to respond to the district ethics committee's inquiries about the M.M. complaint in May 2006. Nor did Redburn reply to the Director's June 2006 letter regarding the M.M. complaint.

Redburn did not respond to the Director's March 24, 2006 notice of investigation regarding the T.K. and S.K. complaint. He did not respond to the district ethics committee's May 2006 inquiries about the T.K. and S.K. complaint. And Redburn ignored the Director's June 2006 letter requesting a response to that complaint.

Finally, Redburn did not respond to the Director's and the district ethics committee's repeated inquiries April through June 2006 regarding the B.B. complaint. Redburn failed to appear at any point in the disciplinary proceedings.

The Director alleges that Redburn's noncooperation with the investigation violated Minn. R. Prof. Conduct 8.1(a)(3) (2005) and 8.4(d) and the mandate of Rule 25, RLPR, that an attorney comply with lawful requests for information from the Director and other investigating authorities. The Director also alleges that Redburn's failure to provide the Director with an affidavit documenting his notification to

clients and tribunals of his suspension violated Minn. R. Prof. Conduct 3.4(c).

Following these events, the Director filed a petition for disciplinary action in July 2007. Redburn failed to respond to the petition within 20 days of being personally served. The Director moved to have the allegations of the petition deemed admitted pursuant to Rule 13(b), RLPR, on October 10, 2007. We granted the motion and directed the parties to submit briefs on the question of the appropriate discipline. Redburn did not submit a brief.

 Because the allegations in the petition have been deemed admitted, we need only determine the appropriate discipline to be imposed for Redburn's misconduct. Rule 13(b), RLPR; *See In re De Rycke,* 707 N.W.2d 370, 373 (Minn.2006). The purpose of attorney discipline is to protect the public and the legal profession not to punish attorneys. *In re Nelson,* 733 N.W.2d 458, 465 (Minn.2007). We consider four factors in determining the appropriate discipline to be imposed: (1) the nature of the misconduct; (2) the cumulative weight of the misconduct; (3) the harm to the public; and (4) the harm to the legal profession. *Id.* at 463. In determining the appropriate discipline, we also weigh any aggravating factors and mitigating circumstances. *De Rycke,* 707 N.W.2d at 374. An attorney's disciplinary history can be an aggravating factor. *See In re Rhodes,* 740 N.W.2d 574, 580 (Minn.2007). Attorney discipline cases involving similar misconduct provide guidance on the appropriate discipline to be imposed, but we

impose discipline based on each case's unique facts and circumstances. *Id.*

### The Nature of the Misconduct

Determining the nature of the misconduct initially requires a decision as to which professional responsibility rules Redburn violated. The Director alleges numerous rule violations and we examine each in turn.[4]

The Director alleges that Redburn's repeated failure to return his clients' calls and his complete abandonment of communication with them violated the requirement of Rule 1.4(a), that an attorney keep clients informed about the status of their cases and comply with clients' reasonable requests for information. *See* Minn. R. Prof. Conduct 1.4(a). We agree that this conduct violated Rule 1.4(a). Redburn's lack of communication with all of the clients at issue also violated the requirement of Rule 1.4(b), that an attorney "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Minn. R. Prof. Conduct 1.4(b).

The Director alleges that Redburn's handling of the B.B. matter violated the requirement of Rule 1.3 that an attorney act with "diligence and promptness in representing a client." *See* Minn. R. Prof. Conduct 1.3. We agree that Redburn violated this rule when he abandoned the B.B. matter sometime around July 2005 and failed to turn over B.B.'s bank records to the trustee, who ultimately had to secure them through a court order.

---

4. Where an attorney defaults in a disciplinary matter and the Director moves to have the allegations of the petition deemed admitted under Rule 13(b), RLPR, only the factual allegations of the petition are deemed admitted. Whether those factual allegations constitute violations of specific rules remains an issue for us to determine. *See In re Swensen,* 743 N.W.2d 243, 244, (Minn.2007) ("By order filed on July 23, 2007, we deemed the allegations of the petition admitted. *Based on those allegations, we conclude that respondent violated Minn. R. Prof. Conduct 8.4(c) and 1.8(a)* and that his misconduct warrants disbarment.") (emphasis added).

The Director alleges that Redburn's representation of B.B. and T.K. and S.K. violated the requirement of Rule 1.16(d), that an attorney take steps to protect his client's interests upon termination of representation. *See* Minn. R. Prof. Conduct 1.16(d). Redburn violated that rule because B.B. and T.K. and S.K. were required to obtain new counsel and Redburn neither "g[ave] reasonable notice to [his] client[s]" nor "allow[ed] time for employment of other counsel." *See id.*

The Director alleges that Redburn's representation of T.K. and S.K. and of D.M. violated Rule 1.15(c)(3). *See* Minn. R. Prof. Conduct 1.15(c)(3) ("A lawyer shall * * * maintain complete records of all funds * * * of a client * * * coming into the possession of the lawyer and render appropriate accounts to the client * * * regarding them."). Redburn failed to account to these clients for his retention of $3,000 in retainer fees they paid him. His failure to account to these clients violated Rule 1.15(c)(3). *See id.*

The Director alleges that Redburn's representation of T.K. and S.K., and of D.M. violated Rule 1.15(c)(4). *See* Minn. R. Prof. Conduct 1.15(c)(4) ("A lawyer shall * * * promptly pay or deliver to the client or third person as requested the funds * * * in the possession of the lawyer which the client or third person is entitled to receive."). Because Redburn failed to forward D.M.'s retainer fee to Redburn's ex-wife, E.S., who Redburn unilaterally retained as substitute counsel, and because he failed to return the retainer fee paid to him by T.K. and S.K., we agree that he violated Rule 1.15(c)(4).

The Director alleges that Redburn's representation of T.K. and S.K. violated Rule 8.4(c). *See* Minn. R. Prof. Conduct 8.4(c) ("It is professional misconduct for a lawyer to * * * engage in conduct involving dishonesty, fraud, deceit, or misrepresenta-

tion.") The petition indicates that, upon receiving the third installment of a retainer payment from T.K. and S.K., Redburn "negotiated [the total of the three payments] for his own benefit." We agree that Redburn's handling of the funds in this manner violated Rule 8.4(c) because his conduct in negotiating the checks for his own benefit, rather than retaining them in his law practice until earned, involved dishonesty. The professional conduct rules require that, upon receipt of funds connected with the representation of a client, the lawyer must place those funds in a client trust account. Minn. R. Prof. Conduct 1.15(a). Redburn violated this rule regarding the retainer from T.K. and S.K.

The Director alleges that Redburn's representation of D.M., and his failure to pay M.M. a professionally incurred debt violated Rule 8.4(d). *See* Minn. R. Prof. Conduct 8.4(d) ("It is professional misconduct for a lawyer to * * * engage in conduct that is prejudicial to the administration of justice.") Redburn "engage[d] in conduct that [was] prejudicial to the administration of justice" when he failed to notify D.M. that Redburn's ex-wife, E.S., would be representing D.M. in court and to send E.S. the retainer fee D.M. paid Redburn. And Redburn engaged in conduct prejudicial to the administration of justice when he failed to pay M.M.'s translation fee even after a final judgment was entered against him. *See, e.g., In re Stanbury,* 561 N.W.2d 507, 510 (Minn.1997) (concluding that attorney's failure to pay any portion of a debt after final judgment was entered against him violated Rule 8.4(d)).

The Director alleges that Redburn violated Rule 26, RLPR, by failing to notify any of his clients of his August 2005 suspension. Redburn's failure to notify any of his clients upon his suspension violated the requirement that a lawyer notify each

represented client of the lawyer's suspension and take steps to ensure that the tribunal is aware of the suspension as well. *See, e.g., De Rycke,* 707 N.W.2d at 375 (considering attorney's failure to inform clients and courts of his suspension a basis for discipline). The Director also alleges that Redburn's failure to provide the Director's office with an affidavit documenting his notification to clients and tribunals of his August 2005 suspension violated Rule 3.4(c). *See* Minn. R. Prof. Conduct 3.4(c) ("A lawyer shall not * * * knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists"). Redburn violated Rule 3.4(c) because the August 2005 suspension order specifically required him to comply with the requirements of Rule 26, RLPR. *In re Redburn,* 702 N.W.2d at 215. Redburn "knowingly disobey[ed] an obligation under the rules of a tribunal" when he failed to notify clients of his suspension as required by Rule 26(a), RLPR, and failed to file an affidavit documenting compliance with the rule as required by Rule 26(e), RLPR. *See* Minn. R. Prof. Conduct 3.4(c).

▮ The Director alleges that Redburn violated Minn. R. Prof. Conduct 8.1(a)(3) (2005) and Rule 25, RLPR, by failing to cooperate with the disciplinary investigation. Redburn violated these rules because he failed to respond to at least 22 inquiries by the Director and district ethics committee. An attorney's failure to cooperate with the disciplinary investigation provides separate grounds for discipline. *See, e.g., In re Rhodes,* 740 N.W.2d at 579 (indicating that "[n]oncooperation has been found to warrant indefinite suspension on its own and to increase the severity of the disciplinary sanction when connected with other professional misconduct") (citation omitted). And the Di-

rector alleges that Redburn's failure to cooperate with the disciplinary investigation was "prejudicial to the administration of justice" in violation of Rule 8.4(d). We agree that Redburn's conduct in failing to cooperate with the disciplinary investigation violated Rule 8.4(d). *See In re Westby,* 639 N.W.2d 358, 369 (Minn.2002) ("[C]onduct which interferes with the disciplinary process is prejudicial to the administration of justice in violation of Rule 8.4(d).").

### The Cumulative Weight of the Misconduct

Recently, discussing the cumulative weight of an attorney's misconduct, we noted that:

> In determining the appropriate discipline for professional misconduct, we consider not just the nature of each individual violation of the rules of professional conduct but also the cumulative weight of all of the professional misconduct * * *. We have repeatedly held that " '[t]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline.' "

*Rhodes,* 740 N.W.2d at 580. Redburn's current misconduct includes failure to communicate with three clients, failure to provide diligent representation, failure to refund $3,000 in retainer fees and account to clients for those fees, failure to inform clients of his suspension, failure to protect two clients' interests on termination of representation, failure to pay a professionally incurred debt, failure to file an affidavit with the Director's office documenting notification of clients and tribunals of his suspension, and failure to cooperate with the disciplinary investigation.[5] In addi-

---

**5.** The Director alleges that Redburn violated

Rule 1.5(a) (prohibiting the charging of un-

tion, some of Redburn's actions involved dishonesty and were prejudicial to the administration of justice.[6]

We also note that much of Redburn's current misconduct is similar to his prior misconduct. We have imposed severe sanctions, including disbarment, in part because an attorney's misconduct is similar or identical to that attorney's prior misconduct. *Rhodes*, 740 N.W.2d at 579 (disbarring attorney in part because his misconduct "closely resemble[d] the misconduct for which [the court] previously disciplined [him]"); *De Rycke*, 707 N.W.2d at 374 (noting similarity between instances of neglect in the disciplinary action before the court and instances of neglect in the attorney's disciplinary history); *In re Brehmer*, 642 N.W.2d 431, 434 (Minn.2002) (disbarring attorney in part because much of his misconduct was "similar, if not identical, to the misconduct that resulted in his previous discipline"); *In re Grzybek*, 567 N.W.2d 259, 263 (Minn.1997) (disbarring attorney in part because attorney's misconduct in the case before the court "continued a pattern of conduct for which [the court had] already disciplined [the attor-

ney]"); *In re Getty*, 518 N.W.2d 18, 21 (Minn.1994) (disbarring attorney in part because of similarity between misconduct before the court and that in attorney's disciplinary history demonstrated a "habit"). The .misconduct in Redburn's disciplinary history includes neglect of client matters, failure to communicate, failing to pay a fee owed to a professional for in-court services, and failing to cooperate with the disciplinary investigation. Redburn's actions in representing B.B., T.K. and S.K., and D.M., and his failure to pay M.M. were similar to his prior acts of misconduct. In this respect Redburn's disciplinary history aggravates his current misconduct and justifies severe discipline.

Another factor aggravating Reburn's misconduct is that much of it occurred while Redburn was suspended from the practice of law. In *De Rycke*, we indicated that an attorney had "fallen far short of showing a renewed commitment to the ethical practice of law" in part because "all of the new allegations occurred either while [the attorney] was on probation * * * or after he was suspended." 707 N.W.2d at 375. Though not "all of the new allega-

---

reasonable fees), Rule 1.1 (requiring an attorney to provide competent representation), and Rule 8.4(c) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation) in connection with his representation of B.B. The Director also alleges that Redburn violated Rule 1.15(a) (requiring attorneys to hold clients' funds in identifiable trust accounts) in connection with his representation of D.M. And the petition alleges that Redburn violated Rule 8.4(d) (prohibiting conduct prejudicial to the administration of justice) in connection with his representation of T.K. and S.K. But the petition's recitation of the facts, even as now deemed admitted, provides an insufficient basis for us to conclude, as a matter of law, that Redburn's conduct violated these rules. We therefore do not rely on these alleged violations in determining the appropriate discipline.

**6.** The Director concedes that there is no evidence that Redburn misappropriated client

funds. Nevertheless, the Director argues that Redburn's financial misconduct should be treated as severely as misappropriation because Redburn's failure to cooperate with the disciplinary investigation caused the Director's inability to make the determination of whether Redburn's misconduct amounts to misappropriation or a failure to account. Regardless of whether we characterize Redburn's financial misconduct as misappropriation or a failure to account, it "[was] a serious violation of the rules of professional conduct and merits severe discipline." *See Rhodes*, 740 N.W.2d at 579 (considering the financial misconduct of an attorney who "accepted more than $5,000 from his clients without accounting for any legal services provided for th[e] payments" but· rendering no decision whether that action constituted misappropriation).

tions" of Redburn's misconduct occurred while he was suspended, Redburn's failure to communicate with B.B., his failure to communicate with T.K. and S.K., and his failure to account for D.M.'s retainer fee occurred after his August 2005 suspension.

### The Harm to the Public and the Legal Profession

We must also consider any harm Redburn's actions have caused to the public and the legal profession. We have noted that, regardless of whether an attorney's misconduct "jeopardize[s] the client's position with respect to a claim, a lawyer's failure to communicate with the client and misrepresentations regarding the status of a pending case are intensely frustrating to the client, reflect adversely on the bar, and are destructive of public confidence in the legal profession." *In re Shaughnessy*, 467 N.W.2d 620, 621 (Minn.1991). At least two of Redburn's clients were forced to obtain new counsel on their own and M.M. has been forced to pursue a judgment against Redburn for his failure to pay her fee. We therefore conclude that Redburn's misconduct injured the public and legal profession.

### Appropriate Discipline

■ We conclude that Redburn's conduct is similar to that of attorneys in other cases where we have ordered disbarment. Recently we disbarred an attorney who engaged in multiple forms of misconduct similar to Redburn's misconduct. *See Rhodes*, 740 N.W.2d at 581. Rhodes's misconduct included violating the terms of his disciplinary probation, accepting funds from his clients without accounting for any legal service provided for the payments, failing to return client property, failing to communicate with several clients, failing to provide diligent representation, failing to cooperate with the disciplinary investiga-

tion and having the aggravating factor of a lengthy disciplinary history. *Id.* at 578–80. Like Rhodes, Redburn neglected several client matters, failed to communicate with a number of clients, failed to refund or account for $3,000 in unearned retainer fees, failed to cooperate with the disciplinary process, and has a prior history of misconduct similar to his current misconduct. But Redburn's misconduct includes violations not involved in *Rhodes*, such as Redburn's failure to inform clients of his suspension and his failure to pay a professionally incurred debt.

We have also disbarred attorneys for misconduct similar to Redburn's in *De Rycke* and *Brehmer*. *See De Rycke*, 707 N.W.2d at 372–73, 375 (involving failure to communicate with clients, failure to act with diligence in representing clients, failure to enter retainer agreements, failure to return an unused expert witness fee and thereby misappropriating $2,000, failure to inform a client of his suspension, failure to maintain sufficient funds in his trust account, failure to cooperate with the disciplinary investigation, and engaging in misconduct similar to that in his disciplinary history); *Brehmer*, 642 N.W.2d at 433 (involving "neglect of client matters, noncommunication with clients, failure to return client files and unearned fees, failure to provide an accounting of services and bills, failure to inform clients of his suspension, charging unreasonable fees, failure to pay a malpractice judgment, failure to respond to a criminal summons, failure to pay a judgment to a former client, improper trust account practices and record keeping, failure to pay certain federal and state taxes, and failure to cooperate with disciplinary authorities").

As we did in all of these cases, we conclude that disbarment is likewise warranted in this case. In Minnesota we recognize that the practice of law "is a privi-

lege, not a right." *In re Swanson,* 405 N.W.2d 892, 893 (Minn.1987). Redburn forfeited his privilege. His misconduct injured his clients, and harmed the profession. Redburn's violation of our rules, including his refusal to participate in this process and his misconduct after we suspended him, demonstrates that unless he is disbarred Redburn will continue to present a risk to the public. Consistent with the purpose of our discipline system, which is to protect the public and deter future misconduct, we hold that disbarment is the appropriate discipline in this case.

So ordered.

DIETZEN, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.