In re PETITION FOR DISCIPLINARY ACTION AGAINST Eric A.L. DE RYCKE, a Minnesota Attorney, Registration No. 22299.

No. A04–417.

Supreme Court of Minnesota.

Jan. 5, 2006.

372

Kenneth L. Jorgenson, Director, Timothy M. Burke, Senior Assistant Director, Craig D. Klausing, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for Appellant.

Eric A.L. De Rycke, Lake Benton, MN, Pro Se.

OPINION

PER CURIAM.

In March 2004, the Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent Eric De Rycke. Because De Rycke failed to respond, the allegations are deemed admitted. The only issue is the appropriate discipline for an attorney who, after having been disciplined three times for similar misconduct, misappropriated client funds, neglected his clients, mismanaged his client trust account, violated a court order, and failed to cooperate with the Director's investigation of these matters. We conclude that the facts and circumstances of this case warrant disbarment.

The disciplinary petition alleges numerous incidents of misconduct based on five matters. Because De Rycke did not answer the petition, the allegations are deemed admitted. *In re Geiger*, 621 N.W.2d 16, 17 (Minn.2001); Rules 12(c) & 13(b), Rules on Lawyers Professional Responsibility (RLPR).

*A. R.K. Matter*

R.K. retained De Rycke in October 2001 on a DWI matter. De Rycke told R.K. he would reschedule R.K.'s court hearing, but he failed to do so. As a result, R.K. did not appear and was charged for failing to appear. The charge was later dropped and the hearing was rescheduled. De Rycke failed to appear at this hearing and did not notify R.K. or the court of his absence. R.K. acted on his own behalf and was able to reschedule the hearing. De Rycke later told R.K. that he missed the hearing because he had car problems, but

he did not answer when R.K. asked why he did not call him or notify the court.

### B. H.K. Matter

In June 1999, H.K. paid De Rycke $700 to defend him against a DWI charge. Although H.K. understood this to be a nonrefundable flat fee, De Rycke did not provide H.K. with a retainer agreement explaining the nature of the fee. De Rycke initially maintained contact with H.K., but failed to tell H.K. of a plea offer that would have resulted in no jail time until after the offer had expired.

In June 2001, H.K. paid De Rycke $2,000 to hire an expert witness who De Rycke said would testify that H.K.'s blood test was inaccurate. No expert ever testified for H.K., and De Rycke failed to provide the Director with the requested documentation to prove that he actually hired an expert. De Rycke did not refund any of H.K.'s $2,000.

While H.K.'s DWI matter was still pending, De Rycke was suspended from the practice of law for his repeated failure to comply with terms of probation. *In re De Rycke* (*De Rycke III*), 644 N.W.2d 797, 801 (Minn.2002). Rule 26, RLPR, requires that a suspended lawyer "notify each client, opposing counsel * * * and the tribunal involved in pending litigation * * * of the lawyer's * * * suspension" unless this court orders otherwise. This court's May 23, 2002, order did not notify De Rycke that he need not comply with Rule 26. *See De Rycke III,* 644 N.W.2d at 797–801. De Rycke did not inform H.K. of his suspension.

### C. T.B. and L.G. Matter

Prior to his suspension, De Rycke was representing T.B. and L.G. in criminal matters. A judge from the Fifth Judicial District notified the Director that De Rycke did not inform T.B., L.G., or the court of his suspension.

### D. Trust Account Matter

In January 2002, First Farmer's & Merchant's Bank honored two checks drawn on De Rycke's trust account. The account had insufficient funds to cover these checks, resulting in overdrafts and NSF charges totaling $326.37.

### E. Noncooperation

In response to the complaints on each of these matters, the Director wrote De Rycke numerous letters demanding an explanation or response. Several of the letters informed De Rycke that the failure to respond could provide a separate basis for discipline. De Rycke failed to respond to any of the letters. The Director made numerous attempts to contact De Rycke but no one knew of De Rycke's whereabouts. The Director's last contact with De Rycke was in the fall of 2001, when De Rycke called to explain his absence at a meeting to discuss these disciplinary matters.

 Because the allegations of the petition are deemed admitted, we will address only the appropriate discipline in this case. In considering a petition for attorney discipline, this court has the ultimate responsibility for determining the appropriate sanction. *In re Oberhauser,* 679 N.W.2d 153, 159 (Minn.2004). "The purposes of disciplinary sanctions for professional misconduct are to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *Id.* (citing *In re Daffer,* 344 N.W.2d 382, 385 (Minn.1984)). This court considers four factors to determine the appropriate sanction: "1) the nature of the misconduct, 2) the cumulative weight of the violations of the rules of professional conduct, 3) the

harm to the public, and 4) the harm to the legal profession." *Oberhauser*, 679 N.W.2d at 159 (quoting *In re Singer*, 541 N.W.2d 313, 316 (Minn.1996)). Appropriate sanctions are determined on a case-by-case basis after considering both aggravating and mitigating circumstances. *In re Wentzell*, 656 N.W.2d 402, 408 (Minn.2003). This court often looks to similar cases for guidance in imposing discipline that is appropriate in the circumstances and consistent with discipline imposed on others for similar conduct. *In re Thedens*, 557 N.W.2d 344, 347 (Minn.1997).

The Director urges this court to disbar De Rycke. He compares De Rycke's unprofessional behavior to conduct that warranted disbarment in *In re Grzybek*, 567 N.W.2d 259, 265 (Minn.1997). Grzybek's violations consisted of repeated neglect of client matters, failure to follow the disciplinary process less than a year after being suspended, misappropriation of client funds, and repeated failure to comply with court orders. *Id.* at 261–63. We noted that each of these violations provided sufficient independent grounds for disbarment. *Id.* at 265. Similarly, De Rycke misappropriated $2,000 from a client, neglected several client matters, failed to comply with a court order, and did not cooperate with the Director's investigation of these matters.

■ Rule 1.3 of the Minnesota Rules of Professional Conduct requires a lawyer to "act with reasonable diligence and promptness in representing a client." The rules also require a lawyer to "keep a client reasonably informed about the status of a matter." Minn. R. Prof. Conduct 1.4. In extreme cases, we have disbarred attorneys for repeated neglect of client matters, misrepresentations, and failure to communicate with clients. *In re Walker*, 461 N.W.2d 219, 222 (Minn.1990); *Grzybek*, 567 N.W.2d at 263. De Rycke clearly violated Rules 1.3 and 1.4 when he failed to reschedule R.K.'s hearing, appear at R.K.'s later hearing, explain the nature of his fees to H.K., tell H.K. why his case had been continued, and inform H.K. of a plea offer. And we have disciplined De Rycke in the past for similar misconduct. *See In re De Rycke (De Rycke I )*, 577 N.W.2d 922, 923 (Minn.1998). To make matters worse, De Rycke's neglect this time potentially subjected his clients to jail time that could have been avoided. Because of De Rycke's numerous other violations, we need not determine whether this alone warrants disbarment. But we note that these incidents of client neglect are serious violations of the rules of professional conduct. *See Grzybek*, 567 N.W.2d at 262.

■ De Rycke also violated the rules of professional conduct when he misappropriated $2,000 from his client. *See* Minn. R. Prof. Conduct 8.4(c) (prohibiting dishonesty, fraud, deceit or misrepresentation); *In re Olsen*, 487 N.W.2d 871, 873–74 (Minn.1992) (holding the misappropriation of funds is a violation of Rule 8.4(c)). When determining the appropriate sanction for financial misconduct, we consider mitigating and aggravating factors, the amount of money involved, whether the funds were returned, the cumulative effect of the other violations, and the attorney's disciplinary history. *See Grzybek*, 567 N.W.2d at 264. Absent "clear and convincing evidence of substantial mitigating circumstances," disbarment is the usual sanction for misappropriation of client funds. *In re Swerine*, 513 N.W.2d 463, 466 (Minn. 1994).

While the amount of money here is not as extreme as in some other disbarment cases, *see, e.g., In re LaChapelle*, 491 N.W.2d 17, 21 (Minn.1992) ($13,670); *In re Weems*, 540 N.W.2d 305, 308 (Minn.1995) ($70,000), we have found disbarment appropriate in cases involving less money than the $2,000 De Rycke misappropriat-

ed, *see, e.g., Grzybek,* 567 N.W.2d at 265 ($750); *In re Walker,* 461 N.W.2d 219, 223 (Minn.1990) ($1,600). Further, De Rycke has not returned this money to his client, which constitutes an aggravating factor. *Weems,* 540 N.W.2d at 309. De Rycke has also demonstrated a pattern of financial misconduct, having been disciplined once before for failing to file his tax returns and pay taxes, *see De Rycke I,* 577 N.W.2d at 922; once for trust account mismanagement, *see In re De Rycke (De Rycke II ),* 627 N.W.2d 331, 331 (Minn.2001); and now having overdrawn from his trust account in violation of Rule 1.15 of the Minnesota Rules of Professional Conduct. Finally, the record does not provide any mitigating factors.

■■■■■ De Rycke also committed misconduct by not cooperating with the Director in the investigation of these matters. Rule 25, RLPR; Minn. R. Prof. Conduct 8.1(a)(3). Failure to cooperate with disciplinary authorities is a serious violation that constitutes separate grounds for discipline. *In re Olson,* 545 N.W.2d 35, 38 (Minn.1996). "In connection with other misconduct, noncooperation increases the severity of the disciplinary sanction." *In re Samborski,* 644 N.W.2d 402, 407 (Minn. 2002). Thus, De Rycke's failure to respond to any of the Director's requests for replies further supports disbarment.

Finally, we note that we have previously ordered discipline against De Rycke on three separate occasions in the past. In 1998, we suspended him from the practice of law for 90 days for failing to file tax returns, client neglect, client noncommunication, and noncooperation with the investigation of these matters. *De Rycke I,* 577 N.W.2d at 922. He was subsequently reinstated, subject to 2 years of supervised probation. *In re De Rycke,* 583 N.W.2d 281, 281 (Minn.1998). In 2001, we publicly reprimanded De Rycke and extended his probation for 2 additional years for commingling business funds, trust account mismanagement, violating the terms of his probation, and noncooperation with the investigation of these matters. *De Rycke II,* 627 N.W.2d at 331. Finally, in 2002, we again suspended De Rycke from the practice of law, but this time indefinitely without eligibility for reinstatement for a minimum of 6 months because of his repeated failure to comply with the terms of his probation and for noncooperation with the Director. *In re De Rycke (De Rycke III),* 644 N.W.2d 797 (Minn.2002).

■■■■■ "After a disciplinary proceeding, this court expects a renewed commitment to comprehensive ethical and professional behavior, and where leniency has been shown once, this court is reluctant to do so again." *Grzybek,* 567 N.W.2d at 262 (internal citations omitted). De Rycke has fallen far short of showing a renewed commitment to the ethical practice of law. First, he failed to comply with the obligation that arose from his third disciplinary proceeding to inform his clients, opposing counsel, and the court of his suspension from the practice of law. *See* Rule 26, RLPR; Minn. R. Prof. Conduct 3.4(c). Second, several instances of De Rycke's misconduct in this case are similar or identical to conduct for which we have disciplined him in the past, including trust account mismanagement, client neglect, and noncooperation with the Director. And we recognize an alarming escalation in the seriousness of his misconduct. Finally, all of the new allegations occurred either while De Rycke was on probation following the 2001 extension, or after he was suspended in 2002. In fact, the misappropriation incident occurred only 8 days after we publicly reprimanded De Rycke and ordered that he, inter alia, "abide by the Minnesota Rules

of Professional Conduct." *See De Rycke II,* 627 N.W.2d at 332.

For these reasons, we conclude that De Rycke's repeated neglect of client matters, misappropriation of client funds, neglect of his clients, mismanagement of his trust account, violation of this court's order, and failure to cooperate with the Director's investigation, after three previous disciplinary proceedings, warrant disbarment.

So ordered.

BLATZ, C.J., took no part in the consideration or decision of this matter.