In re Petition for DISCIPLINARY ACTION AGAINST Bradley C. RHODES, a Minnesota Attorney, Registration No. 155913.

No. A04–2252.

Supreme Court of Minnesota.

Nov. 1, 2007.

Bradley C. Rhodes, Aitkin, MN, pro se.

Craig Donald Klausing, Lawyers Professional Responsibility Board, St. Paul, MN, for Respondent.

## OPINION

PER CURIAM.

This lawyer discipline action arose out of a petition served and filed by the Director of the Office of Lawyers Professional Responsibility alleging that Bradley C. Rhodes violated the Minnesota Rules of Professional Conduct by: failing to abide by client decisions concerning the objectives of the representation (Rule 1.2); failing to act diligently in client matters (Rule 1.3); failing to reasonably communicate with clients (Rule 1.4); acquiring an interest in client property without the client's informed consent (Rule 1.8(a)); failing to hold client funds in trust (Rule 1.15(a)); failing to return client property and unearned fee payments (Rule 1.15(c)); failing to protect clients' interests upon termination of the representation (Rule 1.16(d)); and failing to respond to the disciplinary authority (Rule 8.1(b)). The petition also alleges that Rhodes's conduct violated Rule 25 of the Minnesota Rules on Lawyers Professional Responsibility and a previous order by this court placing Rhodes on probation subject to specific conditions. After Rhodes failed to respond to the petition, we deemed the allegations in the petition admitted and set the matter for oral argument to determine the appropriate discipline. The Director recommends that we disbar Rhodes. We conclude that the appropriate discipline under the facts and circumstances of this case is disbarment.

Rhodes was admitted to the practice of law in Minnesota in May 1984. We disciplined Rhodes for professional misconduct on three previous occasions. In February 1992, we admonished Rhodes for failing to refund unearned client fees. We admonished Rhodes again in July 1996 for failing to serve an answer to a summons and complaint until after a default hearing had occurred in the action. Finally, on May 18, 2005, we admonished Rhodes and placed him on supervised probation for 2 years for failing to file two briefs on behalf of a client and for failing to cooperate with the investigation into that misconduct. *See In re Rhodes,* 696 N.W.2d 328, 329 (Minn.2005).

The current disciplinary petition is based on Rhodes's failure to comply with the terms of the probation previously ordered by this court, new acts of professional misconduct in seven client matters, and Rhodes's failure to cooperate with the investigation into this new professional misconduct.

### A. Violation of Probation Conditions

As a condition of the probation we imposed in May 2005, Rhodes was required to, among other things, provide a list of lawyers who agreed to serve as his probation supervisor, submit specific information about all his active cases by the first of each month, provide a written plan of his office procedures to ensure compliance with the probation terms, and cooperate with the Director's efforts to monitor Rhodes's compliance with the probation. Rhodes failed to submit the list of potential supervisors and the office procedures within the specified timeframe, and repeatedly failed to submit a monthly list of his active cases in a timely fashion. Rhodes also failed, without explanation, to attend two meetings with the Director to discuss Rhodes's compliance with the probation terms and failed to respond to several communications from his probation supervisor and the Director.

## B. New Professional Misconduct in Client Matters

G.O. and L.O. paid Rhodes $1,000 in January 2004 to represent them in a mechanic's lien action. After the initial meeting, Rhodes failed to respond to telephone calls or letters from G.O. and L.O. When the representation was eventually terminated, Rhodes failed to return the clients' file, which included documents necessary to defend their claim. Rhodes has also failed to account for any legal services provided in this matter or to refund the $1,000 G.O. and L.O. paid him.

V.M. paid Rhodes a $500 retainer to represent her in a probate matter. Rhodes deposited this money in his personal account rather than in a trust account. Over the next several months, Rhodes failed to respond to numerous communications from V.M. Ultimately, Rhodes failed to either provide documentation of any legal work performed or refund the $500, and failed to return original documents provided by V.M.

W.R. retained Rhodes in January 2005 to defend him against a driving under the influence (DUI) criminal charge. W.R. and Rhodes agreed to seek modification of an earlier DUI conviction to avoid the permanent loss of W.R.'s driver's license, but Rhodes failed to pursue that strategy within the required timeframe. Before a hearing in March 2006, Rhodes told W.R. that he had negotiated a plea agreement that would result in a conviction for careless driving rather than DUI, and that Rhodes would prepare the documents necessary to finalize the plea agreement. Rhodes apparently failed to prepare these documents, and did not return several telephone calls from W.R. inquiring into the matter. Finally, in September 2006, W.R. fired Rhodes and personally negotiated a new agreement with the prosecutor.

Rhodes began representing K.M. in a marriage dissolution proceeding in April 2005. Although the parties to the dissolution reached a settlement a few months later, Rhodes failed to prepare and distribute the settlement documents as he had agreed to do. Subsequently, a dispute between K.M. and his former spouse led the district court to order the proceedings be reopened. K.M. paid Rhodes $2,000 to appeal the order reopening the proceedings after Rhodes told him there was a strong chance of success. Over the next few months, Rhodes took no action on the appeal and failed to return several telephone calls from K.M. When K.M. confronted Rhodes over this lack of action, Rhodes stated that he had unilaterally decided not to appeal the matter. Rhodes has not provided an accounting of any legal work performed for the $2,000 payment.

In July 2005, Rhodes received $1,000—including $300 for a filing fee and $700 as an advance attorney's fee payment—to represent M.K. in her marriage dissolution proceeding. Rhodes failed to place any of this money in a trust account. During the course of the representation, Rhodes failed to return several telephone messages from M.K. and her family, including calls concerning threats of physical violence made by M.K.'s former spouse against M.K. and her infant daughter. Rhodes has also failed to account for any legal work performed in this matter. Although Rhodes eventually agreed to refund the $1,000, the check he sent to M.K. was denied for insufficient funds and the money was never repaid.

In December 2005, P.T. and D.T. paid Rhodes $500 to represent them in a property dispute. Although Rhodes initially stated that the matter would be resolved by spring 2006, when P.T. spoke to him a few months later, Rhodes indicated that he

had not yet begun working on the matter because "he had been too busy." Over the next few months, Rhodes failed to respond to several communications from P.T. and D.T. In July 2006, Rhodes finally agreed to return the $500 payment and documents, including the original abstract of title and property survey, that he had been given. Neither the money nor the documents were ever returned.

N.F. retained Rhodes to defend her against criminal theft charges related to her handling of a trust. N.F.'s husband, D.F., subsequently retained Rhodes in an unrelated criminal matter. In January 2006, N.F. and D.F. paid Rhodes $500 toward their legal fees and gave him six firearms as collateral for the additional fees. N.F. also gave Rhodes a bag of documents and receipts relating to the trust expenditures as evidence that the payments were legitimate. Rhodes met with N.F. in August 2006 to discuss her case, but N.F. was unable to contact Rhodes during the subsequent months. In November 2006, Rhodes failed to appear at a scheduled court proceeding in N.F.'s criminal case. Rhodes also failed to return the evidence provided by N.F. and the firearms provided as collateral for legal fees.

### C. Noncooperation with the Investigation

Between October 2005 and February 2007, the Director issued 11 notices of investigations regarding Rhodes's failure to follow the conditions of his probation, the new allegations of professional misconduct outlined above, and a separate complaint forwarded to the Director by court personnel. During this period, Rhodes failed to respond to any of the complaints and to several related communications from the district ethics committee investigator and the Director.

## I.

We do not impose disciplinary sanctions to punish a lawyer; rather, we do so "to protect the public, to guard the administration of justice and to deter future misconduct" by both the individual lawyer and by other members of the legal profession. *In re Grzybek,* 567 N.W.2d 259, 262 (Minn.1997) (*Grzybek II*); *see also In re Brooks,* 696 N.W.2d 84, 87–88 (Minn.2005). When determining the appropriate sanction, we consider four factors: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Nelson,* 733 N.W.2d 458, 463 (Minn. 2007). Discipline is imposed based on the unique circumstances of each case, but previous cases are used to draw analogies and to promote consistency in sanctions over time. *Id.* at 463–64; *In re Harp,* 560 N.W.2d 696, 701 (Minn.1997).

### A. Neglect of Client Matters, Failure to Communicate with Clients, and Failure to Return Client Property

We have repeatedly warned that "[a] continuing pattern of client neglect is serious misconduct often warranting indefinite suspension by itself," *Brooks,* 696 N.W.2d at 88, and that more "extreme" cases involving client neglect and failure to communicate with clients may merit disbarment, *In re De Rycke,* 707 N.W.2d 370, 374 (Minn.2006). *See also Grzybek II,* 567 N.W.2d at 263. We have also stated that the failure to return client property and files upon the termination of the attorney-client relationship warrants "serious treatment," particularly when this misconduct "continued a pattern of conduct for which we already disciplined [the lawyer]" and when this misconduct "caused substantial inconvenience and unnecessary frustration

to [the lawyer's] clients." *Grzybek II,* 567 N.W.2d at 263.

The admitted allegations against Rhodes reveal a pattern of neglecting client matters and noncommunication with clients that involves seven new client matters and that closely resembles the misconduct for which we previously disciplined Rhodes. Moreover, the property Rhodes failed to return to his clients included original documents necessary to G.O. and L.O.'s mechanic's lien defense, an original abstract of title and property survey, and evidence regarding N.F.'s defense against criminal charges. Rhodes's retention of these documents likely caused a great deal of inconvenience to his clients. We conclude that this behavior constitutes serious professional misconduct and warrants severe discipline.

### B. Financial Misconduct

■ The misappropriation of client funds is particularly serious misconduct and usually warrants disbarment "absent 'clear and convincing evidence of substantial mitigating factors.'" *De Rycke,* 707 N.W.2d at 374 (quoting *In re Swerine,* 513 N.W.2d 463, 466 (Minn.1994)). In this case, Rhodes accepted more than $5,000 from his clients without accounting for any legal services provided for these payments. The Director concedes in his brief that Rhodes has only been found to have failed to account for client funds, not to have misappropriated those funds. But the Director argues that Rhodes's misconduct should be treated as severely as misappropriation because Rhodes's failure to cooperate is what caused the inability to determine whether Rhodes misappropriated client funds or only failed to account for the funds and because, from a client's perspective, the two violations are the same. We agree that Rhodes's misconduct in this case, whether characterized as misappropriation or failure to account, is a serious

violation of the rules of professional conduct and merits severe discipline.

### C. Violation of the Terms of Disciplinary Probation

■ Failure to comply with the conditions of probation ordered by this court is an additional act of professional misconduct. *See Grzybek II,* 567 N.W.2d at 264–65 (failure to comply with court orders is a "serious violation"); Minn. R. Prof. Cond. 8.1(b); R. Lawyer Prof. Resp. 25. Although we occasionally determine that additional or modified probation is an appropriate sanction for probation violations, we generally conclude that "supervised probation is not appropriate where the attorney consistently fails to communicate with the Director," *In re Danielson,* 620 N.W.2d 718, 721 (Minn.2001); *see also In re Anderson,* 734 N.W.2d 238 (Minn.2007). In this case, Rhodes's repeated failure to respond to the Director's inquiries and to participate in the disciplinary process would render the mere extension or modification of his prior probation inappropriate. We therefore conclude that Rhodes's violation of the conditions of his prior probation is an independent act of misconduct warranting professional discipline.

### D. Noncooperation with the Disciplinary Process

■ A lawyer's failure to cooperate with an investigation into professional misconduct is serious misconduct that constitutes separate grounds for discipline. *De Rycke,* 707 N.W.2d at 375; *see also Brooks,* 696 N.W.2d at 88; *Grzybek II,* 567 N.W.2d at 264. Noncooperation has been found to warrant indefinite suspension on its own, *Brooks,* 696 N.W.2d at 88, and to increase the severity of the disciplinary sanction when connected with other professional misconduct, *De Rycke,* 707 N.W.2d at 375; *see In re Mayrand,* 723

N.W.2d 261, 269 (Minn.2006) (referring to noncooperation as a "serious aggravating factor [ ]"). In this case, Rhodes failed to respond to the 11 notices of investigation and repeated requests for information from the district ethics committee investigator and the Director. Rhodes has also failed to appear before this court in these proceedings. We conclude that Rhodes's repeated failure to cooperate with the disciplinary process is a serious aggravating factor in determining the appropriate discipline.

### E. Prior History of Professional Misconduct and Discipline

■■■■■ "After a disciplinary proceeding, [this court] expect[s] a renewed commitment to comprehensive ethical and professional behavior." *In re Weems*, 540 N.W.2d 305, 309 (Minn.1995). Accordingly, we consider a lawyer's prior discipline and professional misconduct when determining the appropriate discipline for new misconduct. *Brooks*, 696 N.W.2d at 88. We generally impose "more severe sanctions when the current misconduct is similar to misconduct for which the attorney has already been disciplined." *Id.* The new professional misconduct for which we are disciplining Rhodes includes the neglect of seven client matters (including repeated failure to submit promised documents), the failure to account for client fees, and the failure to cooperate with the disciplinary investigation. Moreover, most of this new misconduct occurred at the same time as, and in the months immediately following, the previous disciplinary proceedings against Rhodes for similar violations (failing to submit two briefs and noncooperation with the disciplinary investigation). Finally, the new misconduct is also similar to the misconduct for which we admonished Rhodes in 1992 (failing to return unearned fees) and 1996 (failing to timely serve an answer to a complaint).

We conclude that Rhodes's disciplinary history is a serious aggravating factor in determining the appropriate discipline in this case.

### II.

■■■■■ In determining the appropriate discipline for professional misconduct, we consider not just the nature of each individual violation of the rules of professional conduct but also the cumulative weight of all of the professional misconduct in determining the appropriate sanction. We have repeatedly held that " '[t]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline.' " *Nelson*, 733 N.W.2d at 464 (quoting *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn.2004)). In this case, Rhodes's pattern of neglecting client matters, his repeated failure to communicate with clients, and his financial misconduct involving more than $5,000 in clients funds each warrant severe discipline individually. Rhodes's misconduct also includes violations of the conditions we imposed on his prior disciplinary probation and two significant aggravating factors—his repeated failure to cooperate with the disciplinary process and his history of prior misconduct and discipline. Finally, the record does not contain any suggestion of mitigating factors.

In support of his recommendation that we disbar Rhodes, the Director cites *Grzybek II* as an analogous case. In July 1996, we suspended Grzybek for 6 months for failing to establish the basis for legal fees, to keep his clients informed, to respond to client communications, to promptly return client property, and to cooperate with the Director's investigation. *In re Grzybek*, 552 N.W.2d 215, 215–17 (Minn.1996) (*Grzybek I* ). Approximately 6 months later, the

Director filed a new petition alleging that Grzybek neglected client matters, failed to communicate with clients, misappropriated $750 of client funds, failed to cooperate with the disciplinary process, and disobeyed court orders. *Grzybek II*, 567 N.W.2d at 259–62. We held that Grzybek's repeated neglect of client matters, failure to communicate with clients, and failure to cooperate with the disciplinary process— all of which occurred less than a year after he had been disciplined for similar misconduct—were "sufficient to merit disbarment." *Id.* at 264–65. We also noted that Grzybek's "misappropriation of $750 in client funds and his subsequent failure to make any effort to return the money[,] and his repeated failure to comply with court orders" are "separate grounds upon which he could be disbarred." *Id.* at 265.

But in another analogous case, *In re Brooks*, we concluded that indefinite suspension was more appropriate than disbarment. 696 N.W.2d 84 (Minn.2005). Brooks neglected client matters, failed to communicate with clients, failed to return client files and unearned fees, violated trust account rules, converted client money to her own use, and failed to cooperate with the disciplinary investigation. *Id.* at 86–87. Brooks had previously been disciplined five times for violating trust account rules, representing both parties to a dissolution proceeding, failing to adequately communicate with clients, and failing to provide a complete file to a client. *Id.* at 87. The record in *Brooks* suggested that the death of her father may have caused some of her unprofessional conduct, but we found it difficult to consider this mitigation because of Brooks' failure to provide sufficient information. *Id.* at 87–88. Nonetheless, despite recognizing that a continuing pattern of client neglect, trust account violations, and noncooperation with disciplinary investigations each generally warrant lengthy or indefinite suspensions by themselves, we determined—based on the lack of "complete information of the surrounding circumstances," the small amount of the misappropriation ($200), and Brooks' abandonment of her legal practice—that an indefinite suspension for a minimum of 2 years was the appropriate sanction. *Id.* at 88–89.

We agree with the Director that the present case is more analogous to *Grzybek II* than to *Brooks*. Although the misconduct in *Brooks*, like in *Grzybek II*, was similar to the present case, the record in *Brooks* suggested a mitigating factor about which we lacked complete information. Because of Rhodes's complete failure to participate in the disciplinary process, the record in this case lacks any evidence of mitigating factors.

### III.

In summary, Rhodes's repeated neglect of client matters and noncommunication with clients, his financial misconduct involving $5,000 in client funds, his failure to obey the conditions of the prior disciplinary probation, and his repeated failure to cooperate with the disciplinary process each warrant severe discipline by themselves. When the weight of these violations are combined and considered in light of his prior professional discipline for similar misconduct and the complete lack of mitigating facts in the record of this case, we conclude that the appropriate sanction in this case is disbarment. Therefore, we hold that the appropriate discipline in this case is disbarment.

Accordingly, we order that:

1. Bradley C. Rhodes be disbarred from the practice of law, effective immediately;

2. Rhodes shall comply with the requirements of Rule 26 of the Minnesota

Rules of Lawyers Professional Responsibility; and

3. Rhodes shall pay to the Director the sum of $900 in costs pursuant to Rule 24 of the Minnesota Rules of Lawyers Professional Responsibility.

So ordered.

ANDERSON, RUSSELL A., C.J., took no part in the consideration or decision of this matter.