STATE OF MINNESOTA

IN SUPREME COURT

A23-0080

Original Jurisdiction

In re Petition for Disciplinary Action against
Michael B. Padden, a Minnesota Attorney,
Registration No. 0177519.

Per Curiam
Took no part, Hennesy, Gaïtas, JJ.

Filed:  August 14, 2024
Office of Appellate Courts

_____

Susan M. Humiston, Director, Timothy M. Burke, Senior Assistant Director, Office of
Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Michael B. Padden, Lake Elmo, Minnesota, pro se.

_____

S Y L L A B U S

Absent any mitigating factors, disbarment is the appropriate discipline for an
attorney who misappropriates client funds.

O P I N I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) filed
a petition and a supplementary petition for disciplinary action against respondent
Michael B. Padden.  Padden answered the initial petition, but he failed to answer the
supplementary petition.  In the supplementary petition, the Director alleged, in part, that
Padden misappropriated client funds, forged his client's signature to conceal the

1

misappropriation, failed to return unearned client fees, neglected client matters, and failed to cooperate with the Director's investigation. Based on Padden's failure to answer, the referee deemed the allegations in the supplementary petition admitted. After a three-day evidentiary hearing, the referee found that Padden had committed additional misconduct. The referee found no mitigating factors. Based solely on the allegations deemed admitted in the supplementary petition, and in the absence of any mitigating factors, we disbar Padden from the practice of law.

## FACTS

Padden gained admission to the Minnesota bar in 1986. He has the following disciplinary history: (1) In 1996, Padden received a private admonition for failing to enter into a written contingent fee agreement with a client and failing to return that client's file upon request; (2) in 2017, Padden received a public reprimand for agreeing to settle a case without his client's consent, failing to communicate the settlement agreement to the client, providing financial assistance to his client, and making a false statement to the court; and (3) in 2019, Padden received a private admonition for failing to deposit advanced costs into a trust account and failing to maintain receipts of cash payments, countersigned by the payor.

On January 17, 2023, the Director filed a petition for disciplinary action against Padden. Padden answered that petition, denying some of the factual allegations while conceding others, and denying any rule violations. We referred the matter to a referee. On August 18, 2023, the Director filed a supplementary petition against Padden. Padden failed to answer the supplementary petition, and the allegations contained therein were

deemed admitted by order of the referee. *See* Rule 13(b), Rules on Lawyers Professional Responsibility (RLPR) ("If the respondent fails to file an answer . . . , the [petition's] allegations shall be deemed admitted . . . .").

The referee held a three-day evidentiary hearing in October 2023. Following the hearing, the referee issued findings of fact and conclusions of law, ultimately recommending that Padden be disbarred. On December 29, 2023, we suspended Padden pursuant to Rule 16(e), RLPR. Padden ordered a transcript of the hearing. He challenges some of the referee's findings of fact and conclusions of law but concedes others. Padden also challenges the referee's recommended discipline of disbarment.

The referee's findings of fact and conclusions of law regarding the allegations of misconduct in the initial petition for disciplinary action included findings of trust account violations, as well as misconduct regarding two separate matters for S.S. and J.W., the K.J.K. matter, the M.C. matter, the K.J. matter, and the L.A. matter.[1] We have no need, however, to detail these matters further or to reach Padden's challenges to the findings and conclusions regarding these matters. Instead, we focus below only on the misconduct alleged in the Director's supplementary petition for disciplinary action. Because Padden failed to timely answer the supplementary petition, those allegations were deemed admitted by order of the referee. *See* Rule 13(b), RLPR ("If the respondent fails to file an

---

[1]     Although we refer to the referee's findings and conclusions here, we make no determination that Padden committed any misconduct alleged in the initial petition for disciplinary action, and the allegations in the initial petition do not inform our discipline decision.

answer . . . , the petition's allegations shall be deemed admitted . . . ."). These allegations serve as the sole basis for our subsequent analysis on the appropriate discipline for Padden's misconduct because they are deemed admitted and, as we discuss below, are serious enough—on their own— to warrant disbarment.

### The J.V.-C. Matter

In 2021, J.V.-C., an undocumented immigrant, was arrested in California and extradited to Minnesota on an outstanding warrant. While in custody, J.V.-C. retained Padden to represent him for a $30,000 flat fee. J.V.-C. and Padden agreed that if J.V.-C. received a sentence of more than a year—which would trigger deportation proceedings— Padden would refund $25,000 of that fee to J.V.-C.'s wife. As written, the fee agreement failed to comply with Minn. R. Prof. Conduct 1.5(b)(1) (governing flat fee agreements), and it misstated the amount to be refunded to J.V.-C.'s wife if the conditions for a refund were met.

An updated fee agreement brought the original into compliance with Rule 1.5(b)(1), but again failed to accurately state the amount to be refunded. In a text exchange with J.V.-C.'s wife, who inquired as to why that amount was incorrectly stated, Padden affirmed his understanding that he would refund the $25,000 if J.V.-C. were deported. Padden and J.V.-C. then executed another updated fee agreement, accurately setting out the terms of the fee refund.

J.V.-C.'s wife wired Padden $30,000. On June 3, 2022, J.V.-C. was sentenced to 20 months in prison. Per Padden's agreement with J.V.-C., this sentence—and the

attendant deportation proceedings—required Padden to refund $25,000 to J.V.-C.'s wife. Padden failed to refund that $25,000.

On June 6, 2022, a few days after J.V.-C.'s sentencing, Padden met with J.V.–C. in custody. J.V.-C. executed an authorization allowing Padden to speak to state employees regarding J.V.-C.'s case ("DOC Authorization"). Padden asked that J.V.-C. let him retain the $25,000. J.V.-C. declined.

In early July 2022, J.V.-C.'s wife began reaching out to Padden about the $25,000, sharing her bank account information so that he could complete the wire transfer. Padden responded that he could not give her any information without J.V.-C.'s permission. J.V.-C. gave Padden that permission on July 14, 2022 but also affirmed that he did not consent to Padden keeping any amount of the flat fee over $5,000.

On August 3, 2022, Padden sent J.V.-C.'s wife the original fee agreement, with a handwritten attachment entitled "Amendment to Fee Agreement," which appeared to be executed by Padden and J.V.-C. on June 6, 2022—the day that J.V.-C. signed the DOC Authorization. But Padden never presented this amendment to J.V.-C., and J.V.-C. did not execute the amendment or agree that Padden could retain the $25,000. Instead, J.V.-C.'s signature on the amendment was forged.

Padden has returned no portion of the $25,000 to J.V.-C. or J.V.-C.'s wife. This has been a hardship on J.V-C.'s wife, who is raising their children and needed that money to build a well. Without the money for the well, the family was forced to take out an expensive loan to cover the expense.

In the J.V.-C. matter, Padden violated Minn. R. Prof. Conduct 8.4(c)[2] by creating a forged fee agreement purportedly entitling himself to $25,000, and failing to remit any portion of those funds, thereby intentionally misappropriating client funds; Minn. R. Prof. Conduct 4.1[3] and 8.4(c) by making knowingly false representations to J.V.-C.'s wife; and Minn. R. Prof. Conduct 8.1(a),[4] 8.4(c), and 8.4(d)[5] by making knowingly false representations to the Director in sending her the forged fee agreement in connection with her investigation and claiming that J.V.-C. signed the agreement.

***The H.J. Matter***

In August 2022, H.J. retained Padden and signed a fee agreement, pursuant to which H.J. paid an $8,500 advance fee. Padden did not obtain a receipt countersigned by H.J. for this payment, and he did not deposit the fee into his trust account. Three days after retaining Padden, H.J. terminated the representation and requested a full refund, which Padden refused. Padden stated that he had spent more than 30 hours on the matter and that the $8,500 was a "lump sum."

---

[2] *See* Minn. R. Prof. Conduct 8.4(c) ("It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation . . . .").

[3] *See* Minn. R. Prof. Conduct 4.1 ("In the course of representing a client a lawyer shall not knowingly make a false statement of fact or law.").

[4] *See* Minn. R. Prof. Conduct 8.1(a) ("[A] lawyer . . . in connection with a disciplinary matter, shall not . . . knowingly make a false statement of material fact . . . .").

[5] *See* Minn. R. Prof. Conduct 8.4(d) ("It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice . . . .").

In the H.J. matter, Padden violated Minn. R. Prof. Conduct 1.15(h), as interpreted by Appendix 1 thereto,[6] by failing to obtain a receipt countersigned by H.J.; Minn. R. Prof. Conduct 1.5(b)(3)[7] by failing to refund the unearned portion of the $8,500 flat fee; and Minn. R. Prof. Conduct 1.15(a)[8] and 1.15(c)(5)[9] by failing to deposit the $8,500 advance fee into his trust account until earned.

***The R.L. Matter***

In May 2022, Padden represented R.L. in several cases for a $5,000 flat fee. A few months later, Padden withdrew from each case, though they were pending, and failed to refund the unearned portion of the fee.

In the R.L. matter, Padden violated Minn. R. Prof. Conduct 1.5(b)(3) by failing to refund the unearned portion of the $5,000 flat fee.

---

[6] *See* Minn. R. Prof. Conduct 1.15(h) ("Every lawyer engaged in private practice of law shall maintain or cause to be maintained on a current basis books and records sufficient to demonstrate income derived from, and expenses related to, the lawyer's private practice of law . . . ."); *see also* Minn. R. Prof. Conduct Appendix 1(I)(6) ("Cash payments must be documented by a receipt countersigned by the payor, which identifies the client on whose behalf the cash payment was received.").

[7] *See* Minn. R. Prof. Conduct 1.5(b)(3) ("Whenever a client has paid a flat fee . . . and the lawyer-client relationship is terminated before the fee is fully earned, the lawyer shall refund to the client the unearned portion of the fee. If a client disputes the amount of the fee that has been earned, the lawyer shall take reasonable and prompt action to resolve the dispute.").

[8] *See* Minn. R. Prof. Conduct 1.15(a) ("All funds of clients or third persons held by a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts . . . .").

[9] *See* Minn. R. Prof. Conduct 1.15(c)(5) ("A lawyer shall . . . deposit all fees received in advance of the legal services being performed into a trust account and withdraw the fees as earned.").

7

### *Failure to Attend Court Hearings*

In 2023, Padden failed to appear for at least five court hearings in four matters. The matters in which Padden failed to appear are: (1) the S.Y.I. matter, in which Padden twice failed to appear for S.Y.I.'s plea hearing and, on the second failure to appear, a warrant was issued for S.Y.I.'s arrest; (2) the S.M.K. matter, in which Padden failed to timely appear for a pretrial hearing and was unaware that his client had failed to complete a class that would permit him to resolve the case by plea agreement; (3) the Q.D.C. matter, in which Padden failed to appear at a sentencing hearing; and (4) the J.J.S. matter, in which Padden and J.J.S. did not appear for a criminal trial, and Padden then failed to comply with the requirements to withdraw from his representation of J.J.S.

In these matters, Padden violated Minn. R. Prof. Conduct 1.3[10] and 8.4(d)[11] by failing to appear for the hearings in the S.Y.I., S.M.K., Q.D.C., and J.J.S. matters; and Minn. R. Prof. Conduct 1.16(c)[12] and 3.4(c)[13] by failing to comply with the requirements to withdraw as J.J.S.'s counsel.

---

[10]   *See* Minn. R. Prof. Conduct 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client.").

[11]   *See* Minn. R. Prof. Conduct 8.4(d) ("It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice . . . .").

[12]   *See* Minn. R. Prof. Conduct 1.16(c) ("A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation.").

[13]   *See* Minn. R. Prof. Conduct 3.4(c) ("A lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists . . . .").

8

*Failure to Cooperate with the Director's Investigation*

During the Director's investigation into Padden's misconduct, Padden failed to respond to many of the complaints against him. The supplementary petition alleges that Padden failed to respond to the complaint in the J.V.-C. matter, the complaint of prosecutor M.L., the complaints of two clients,[14] the complaint of the Honorable Juanita Freeman, and the complaint of the Honorable Sheridan Hawley.

The referee concluded that Padden violated Minn. R. Prof. Conduct 8.1(b)[15] and Rule 25(a),[16] RLPR, by failing to cooperate with the Director's investigation of his trust account and client matters.

## ANALYSIS

If a party orders a transcript, "none of the [referee's] findings of fact or conclusions shall be conclusive." Rule 14(e), RLPR. In such a case, we review a referee's findings of fact and conclusions that a lawyer has violated a rule of professional conduct for clear error. *In re Kaminsky*, 999 N.W.2d 866, 874 (Minn. 2024). Here, Padden ordered a transcript.

But because of the unique circumstances of this case, we need not review the referee's findings and conclusions regarding the allegations in the initial petition for

---

[14] The Director later informed the referee that Padden responded to one of the clients' complaints shortly before the evidentiary hearing.

[15] *See* Minn. R. Prof. Conduct 8.1(b) ("[A] lawyer . . . in connection with a disciplinary matter, shall not . . . knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority . . . .").

[16] *See* Rule 25(a), RLPR ("It shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with . . . the Director . . . .").

disciplinary action for clear error. The Director filed two petitions for disciplinary action against Padden. Padden answered the initial petition but failed to answer the supplementary petition. *See* Rule 13(a), RLPR ("Within 20 days after service of the petition, the respondent shall file an answer in this Court, with proof of service."). Based on Padden's failure to answer the supplementary petition, and following the Director's motion, the referee deemed the allegations in that petition admitted in an order granting summary relief for the Director. *See* Rule 13(b), RLPR ("If the respondent fails to file an answer within the time provided . . . , the allegations shall be deemed admitted . . . .").

When the allegations in a petition for disciplinary action are deemed admitted, the only remaining task is for us to determine the appropriate sanction for the attorney's misconduct. *In re Ulanowski*, 834 N.W.2d 697, 701 (Minn. 2013). Because disbarment—the most severe discipline we impose—is the appropriate discipline for the allegations deemed admitted in the supplementary petition, we need not review any of the referee's findings or conclusion regarding the misconduct alleged in the initial petition for disciplinary action.

## A.

We first address whether there are any grounds for us to vacate the referee's order deeming the allegations in the supplementary petition admitted. Padden challenges the referee's findings and conclusions on the deemed-admitted allegations, but he does not seem to challenge the referee's authority to deem those allegations admitted. And Padden cites to no legal authority, and to nothing in the record, in support of an argument that the referee should not have granted summary relief for the Director on the allegations in the

10

supplementary petition. We have denied an attorney's request to vacate an order deeming allegations in a petition for disciplinary action admitted when the attorney failed "to offer a credible explanation for [the] delay" and the "proposed answer [was] effectively a general denial." *In re Swensen*, 743 N.W.2d 243, 246–47 (Minn. 2007), *modified on reh'g* (Minn. 2008). In that case, we concluded that there was no "authority for vacating, over the objection of the Director, an order . . . deeming facts to be admitted as a result of a failure to answer in a timely manner." *Id.* at 246.

Beyond Padden's lack of citation to evidence or authority, he still has not filed or served an answer to the supplementary petition. Padden challenges the referee's order by arguing that he and his attorney made a "mistake" in failing to timely answer, but these general claims that he and his counsel were negligent do not provide a "credible explanation" for the delay. *See id.* at 246–47 (denying an attorney's motion to vacate the court's order deeming the allegations in the petition admitted that was filed "more than eight weeks after respondent was served with the petition"). Under these circumstances, we decline to vacate the referee's order for summary relief on the allegations in the supplementary petition, and we accept the admission of those allegations as controlling. For this reason, Padden's challenges to the referee's findings and conclusions related to the allegations in the supplementary petition are not properly before us.

B.

Because the referee ordered that the allegations in the supplementary petition be deemed admitted and there is no basis for us to vacate that order, the only issue before us on the allegations in the supplementary petition is the appropriate discipline to impose.

11

These admitted allegations—including that Padden misappropriated $25,000 in client funds and then concealed the misappropriation by forging a client's signature on an amended fee agreement—are serious. Alone, they warrant disbarment, and as set forth below, we conclude that disbarment is appropriate here. Accordingly, we decline to address Padden's challenges to the referee's findings and conclusions on the allegations not deemed admitted, because any error therein by the referee would not impact the appropriate discipline, and any allegations otherwise proven merely provide additional support for Padden's disbarment.

The purpose of professional discipline "is not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010). To determine the appropriate discipline for an attorney, we consider four factors: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession. *In re Kleyman*, 960 N.W.2d 566, 572 (Minn. 2021). "We also consider aggravating and mitigating circumstances" when determining the appropriate discipline. *Id.* And "although we impose discipline on a case-by-case basis, we look to similar cases for guidance" and to ensure consistent discipline. *In re Capistrant*, 905 N.W.2d 617, 620 (Minn. 2018). We have also held that disbarment is the appropriate discipline for misappropriation of client funds in the absence of any mitigating factors. *See, e.g.*, *In re Lee*, 3 N.W.3d 278, 284 (Minn. 2024); *In re Bradley*, 7 N.W.3d 604, 609 (Minn. 2024); *In re De Rycke*, 707 N.W.2d 370, 374 (Minn. 2006).

The allegations from the supplementary petition, deemed admitted, consist of the (1) J.V.-C. matter; (2) the H.J. matter; (3) the R.L. matter; (4) the four matters in which Padden failed to attend court hearings (the S.Y.I. matter, the S.M.K. matter, the Q.D.C. matter, and the J.J.S. matter); and (5) certain allegations of noncooperation with the Director's investigation.

We first consider the nature of Padden's misconduct, the most serious of which was misappropriation of client funds. Misappropriation occurs when "funds are not kept in trust and are used for a purpose other than one specified by the client." *In re Taplin*, 837 N.W.2d 306, 311 (Minn. 2013) (citation omitted) (internal quotation marks omitted). Here, the supplementary petition establishes that Padden misappropriated J.V.-C.'s payment. Specifically, Padden retained $25,000 that he was obligated to refund to J.V.-C.'s wife under the relevant fee agreement. Misappropriation alone "usually warrants disbarment absent clear and convincing evidence of substantial mitigating factors." *In re Rhodes*, 740 N.W.2d 574, 579 (Minn. 2007) (citation omitted) (internal quotation marks omitted).

Padden used forgery to conceal or explain away his misappropriation. Specifically, Padden forged J.V.-C.'s signature on an amended fee agreement that purported to entitle Padden to $25,000. When misappropriation involves "other ethical violations in addition to the misappropriation, particularly misrepresentations to conceal the misappropriation, mitigating factors usually will not militate against disbarment." *In re Rooney*, 709 N.W.2d 263, 272 (Minn. 2006); *In re Samborski*, 644 N.W.2d 402, 407 (Minn. 2002) (stating that an attorney's "dishonesty after his misappropriation of funds further support[ed]

13

disbarment" where the attorney "made misrepresentations and gave false documents to clients to conceal the misappropriation").

Padden also engaged in other serious misconduct. In the H.J. matter, Padden failed to deposit an $8,500 advance fee into trust and failed to refund the unearned portion of that fee. In the R.L. matter, Padden failed to refund the unearned portion of a $5,000 flat fee. Failing to return unearned fees is "serious misconduct" because clients are "deprived of the use of their funds without any explanation." *Taplin*, 837 N.W.2d at 312.

Noncooperation with the Director's investigation is itself "independent grounds for serious discipline." *In re Villanueva*, 931 N.W.2d 816, 823 (Minn. 2019). The Director sent Padden notices of investigation into the complaints against him, many of which Padden failed to answer. Failure to cooperate with a disciplinary investigation can "warrant indefinite suspension on its own" and "increase the severity of the disciplinary sanction when connected with other professional misconduct." *Rhodes*, 740 N.W.2d at 579.

Finally, we consider "other disciplinary rule violations" more severely when paired with "serious client neglect and incompetence." *In re Fru*, 829 N.W.2d 379, 389 (Minn. 2013); *In re Udeani*, 984 N.W.2d 550, 553 (Minn. 2023). Padden's other disciplinary rule violations include (1) the failure to appear at a hearing in the S.Y.I. matter, resulting in the issuance of a bench warrant for S.Y.I.'s arrest; (2) the failure to timely appear for S.M.K.'s pretrial hearing without notice to the court or prosecution; (3) the failure to appear for Q.D.C.'s sentencing without notice to the court or prosecution; (4) the

failure to appear for J.J.S.'s trial without notice to the court or prosecution; and (5) the failure to comply with the requirements to withdraw as J.J.S.'s counsel.

Next, we consider "the cumulative weight of all of the professional misconduct in determining the appropriate sanction." *Rhodes*, 740 N.W.2d at 580. "We distinguish between a brief lapse in judgment or a single, isolated incident and multiple instances of misconduct occurring over a substantial amount of time, the latter of which warrants greater discipline." *Lee*, 3 N.W.3d at 283 (citation omitted) (internal quotation marks omitted). Thus, "the cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004).

In 2022 and 2023, Padden misappropriated client funds, failed to return unearned fees, failed to appear at hearings across multiple client matters, and violated many rules of professional conduct. His misconduct was neither a "brief lapse in judgment" nor a "single, isolated incident." *See Ulanowski*, 834 N.W.2d at 703 (citation omitted) (internal quotation marks omitted) (concluding that misconduct spanning "more than a year" was not a brief lapse in judgment).

We also measure harm to the public based on "the number of clients harmed [and] the extent of the clients' injuries." *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011) (citation omitted) (internal quotation marks omitted). In the supplementary petition, the Director named seven clients that Padden has harmed through his misconduct. Most egregiously, Padden misappropriated $25,000 from J.V.-C., causing J.V.-C.'s family serious financial harm. The family had borrowed the $25,000 to pay Padden and, due to

15

Padden's misappropriation, was then unable to afford the construction of a new well on their property. Consequently, the family had to borrow additional money and pay interest on that loan. J.V.-C. testified that he and his wife raise six children together. To date, Padden has not returned to J.V.-C., or J.V.-C.'s wife, the $25,000 owed to them. Padden also harmed H.J. and R.L. by failing to return the unearned fees he retained in connection with their representation.

Finally, we consider harm to the legal profession. The misappropriation of client funds "is a breach of trust that reflects poorly on the entire legal profession and erodes the public's confidence in lawyers." *Rooney*, 709 N.W.2d at 270. And J.V.-C. testified that he "lost faith in lawyers" because of Padden's misconduct.

The referee permitted Padden to present evidence of mitigation at the evidentiary hearing, but eventually concluded that no mitigating factors were present. Padden testified, in support of mitigation, that he has recently been diagnosed with post-traumatic stress disorder (PTSD) and that he has suffered from depression for most of his life. Padden provided almost no evidence of these conditions other than his own testimony,[17] but he does cite to emails between his counsel and the Director that reference his mental health

---

[17] At the evidentiary hearing, the Director asked Padden whether part of discovery included inquiries into his mental health issues. Padden responded that he "had told [the Director] what my issues were in an email" and was then provided "with medical authorizations." The Director then asked Padden, "And for a few reasons those authorizations just didn't work out; correct?" Padden replied, "Yeah, that's what you told me. I mean, I thought we -- we filled them out first and then filled them out a second time. I was surprised when you told me that the second way we did them wasn't correct, so -- I don't know."

issues.[18]  Padden also claims that he was experiencing various problems throughout the time of his misconduct that negatively affected his business, including that he lost his phone and that his longtime assistant briefly went to work elsewhere.  The referee, assessing Padden's credibility and the evidence presented, rejected these arguments in support of mitigation.

For a severe psychological disorder to be a mitigating factor, an attorney must establish (1) that they have a severe psychological problem; (2) that the psychological problem was the cause of the misconduct; (3) that they are undergoing treatment and are making progress to recover from the psychological problem which caused or contributed to the misconduct; (4) that the recovery has arrested the misconduct; and (5) that the misconduct is not likely to recur.  *In re Weyhrich*, 339 N.W.2d 274, 279 (Minn. 1983).

Padden's own testimony, without more, does not meet this burden of proof, as it fails to establish the severity of his condition or that it caused his misconduct.  *In re Jones*, 834 N.W.2d 671, 678–79 (Minn. 2013) (concluding that the referee did not clearly err in finding that an attorney's depression was not a severe psychological disorder, and did not cause him to misappropriate client funds, despite testimony by his psychologist that he suffers from severe depression).  For this reason, the referee did not clearly err in concluding that Padden's depression and PTSD are not mitigating factors.

---

[18]     These emails include correspondence from Padden's then-counsel to the Director, stating that Padden failed to respond to certain complaints due, in part, to his depression. In another email from Padden to the Director, Padden states that he has not yet responded to the complaints against him because he has pneumonia, depression, and PTSD, he recently finished a second-degree murder trial, and he is taking Zoloft (or its equivalent). In that email, Padden also states that he is going to start seeing a therapist.

Padden also claims, in support of mitigation, that he has practiced law for decades and is a very good attorney, and that he has waived fees for his clients in the past. Evidence in support of this contention came from Padden's testimony, and from that of his former clients who testified in the Director's case-in-chief and acknowledged that Padden achieved good results for them.

That an attorney has obtained "excellent results" for "sometimes difficult clients" has been treated as a mitigating factor by a referee. *In re Hartke*, 529 N.W.2d 678, 683 (Minn. 1995). But we have also stated that, where evidence of reputation or "excellent results" comes only from testimony, the "referee is in the best position to assess the relative weight to give to witnesses' testimony." *In re Albrecht*, 779 N.W.2d 530, 538 (Minn. 2010); *see also In re Wentzel*, 711 N.W.2d 516, 520 n.1 (Minn. 2006). Because the referee determined, based on the testimony of Padden and his former clients, that any acknowledgments that Padden did good work for those clients "were given grudgingly at best," the conclusion that this evidence of reputation or excellent results is not a mitigating factor was not clearly erroneous.

In sum, the referee did not clearly err in finding no mitigating factors. And, although the referee found several aggravating factors, we need not consider them because, regardless of those aggravating factors, in the absence of any mitigating factors, misappropriation of client funds warrants disbarment. *Lee*, 3 N.W.2d at 284; *Bradley*,

7 N.W.3d at 609.  Accordingly, we conclude that the appropriate discipline for Padden is disbarment.[19]

## CONCLUSION

For the foregoing reasons, respondent Michael B. Padden is disbarred from the practice of law in the State of Minnesota, effective on the date of this opinion.  Respondent must comply with Rule 26, RLPR (requiring notice to clients, opposing counsel, and tribunals), and must pay $900 in costs under Rule 24(a), RLPR.

Disbarred.


HENNESY, J., not having been a member of the court at the time of submission, took no part in the consideration or decision of this case.


GAÏTAS, J., not having been a member of the court at the time of submission, took no part in the consideration or decision of this case.

---

[19]     On March 13, 2024, the Director filed a motion to strike portions of Padden's addendum.  Padden filed a response, and we deferred ruling on the motion pending consideration of the merits of this case. *In re Padden*, A23-0080, Order at 1 (Minn. filed Apr. 3, 2024).  To the extent that the materials at issue in the addendum are outside of the record, we now grant the Director's motion to strike pursuant to Minn. R. Civ. App. P. 110.01.

On June 21, 2024, Padden filed a motion seeking permission to file miscellaneous documents with our court.  These documents pertain to matters alleged in the initial petition.  Because our conclusion regarding the appropriate discipline for Padden is based solely on the allegations in the supplementary petition, we deny Padden's motion to file miscellaneous documents as moot.